[No. 30076. Department Two. March 27, 1947.]

FRED A. HOLM, *Appellant,* v. EDNA B. HOLM, *Respondent.*[1]

[1]Reported in 178 P. (2d) 725.

*Bigelow & Manier* and *George F. Yantis,* for appellant.

*J. T. Trullinger* and *O'Leary & Meyer,* for respondent.

STEINERT, J.—Plaintiff brought suit for divorce from the defendant. By cross-complaint defendant sought similar relief. Upon a trial before the court, an interlocutory order was entered granting a divorce to the defendant, making a property division between the parties, and requiring plaintiff to provide funds for the support of their minor children.

Plaintiff appealed from only that portion of the order relating to the amount and terms of the property award to the defendant.

Appellant, Fred A. Holm, and respondent, Edna B. Holm, intermarried January 9, 1926. Two children were born of the union: one, a boy, who at the time of the trial of this action was approximately sixteen years of age and was attending high school in Olympia; the other, a girl, who at that time was about fourteen years old and was attending a seminary for girls in Tacoma.

The married life of the parties has been an unhappy one for the greater part of its existence. Prior to the birth of the children, respondent had instituted an action for divorce from appellant, but a reconciliation was thereafter effected, and the suit was dismissed. Since then, however, dissensions of one kind or another have continually arisen, causing the parties to drift further and further apart. Concluding that it was no longer possible for them to live together with any degree of happiness, they finally decided that one or the other should institute an action for divorce.

Accordingly, on November 20, 1945, appellant filed a complaint, praying that he be awarded a divorce from respondent; that provision be made for the custody and support of the children; and that a reasonable amount be awarded to the respondent. Shortly thereafter, respondent filed an answer, including a cross-complaint in which she asked that she be granted a divorce, together with the custody and control of the two children; that the court make an equitable division of the property; that the appellant be required to contribute monthly a reasonable amount for the care and support of the minor children; and that she be allowed her costs and a reasonable sum for her attorneys' fees.

Issues having been fully joined, the cause came on for trial, at which time it was stipulated between counsel that the hearing proceed upon respondent's cross-complaint. At the conclusion of the evidence, the trial court rendered an oral decision declaring that an interlocutory order be entered granting respondent a divorce from appellant and dividing the property equally between the parties. Some

months later, the court made findings of fact, drew conclusions of law, and entered an interlocutory order in accordance with the oral decision and, further, setting forth in detail the amount and terms of the award to be made to respondent as her share of the property and for the support of the children, together with her costs of suit and a fee for her attorneys. This appeal followed, bringing up for review only the matter of the property award made by the trial court in favor of the respondent.

Since no appeal was taken from that portion of the interlocutory order which granted the divorce to the respondent, rather than to the appellant, it will not be necessary to refer to the evidence concerning that issue, other than to say that it was sufficient to warrant the order made by the trial court in that respect. We therefore confine ourselves to a consideration of the questions relating to the property award to the respondent.

On those questions, there is no dispute as to the facts involved. Appellant is a capable and eminently successful businessman, of long and varied commercial experience, and through thrift and acumen has amassed considerable wealth. The evidence concerning his vocational progress and present pecuniary standing was supplied by his own testimony upon cross-examination, supported by a full financial statement, consisting of twenty-four typewritten pages. The statement was furnished by the appellant, on the prior demand by the respondent, and was compiled by a certified public accountant for use in court.

Appellant entered upon his business career in 1923, which was about three years prior to his marriage. His operations, all conducted under the trade name of "The Olympia Feed Company—Fred Holm," included a general feed business in the city of Olympia, the financing of transactions involving the purchase of automobiles by individuals, the negotiation of small loans to borrowers, the acquisition of real estate contracts, and other similar activities. At some time not definitely shown in the record, a branch of the general business was established in the city of Shelton. Subsequent to the marriage, appellant continued operation of the busi-

ness, including its various activities, in the same manner and under the same name as before, and in consequence thereof it has steadily grown to its present proportions.

It appears from the undisputed evidence and from a specific finding made by the trial court that, at the time of the marriage, appellant's assets had a value of $72,836.01. The court further found that, after the marriage, these separate assets of the appellant were commingled with the community property thereafter acquired by the parties, and that at the time of the trial the total assets, considered as community property, amounted to $342,233.67. This latter amount included the home, valued at $13,890.16; household goods and furniture, valued at $3,000; and the business investment, which, together with certain miscellaneous items, was valued at $325,343.51. For the purposes of this case, we need refer to only three items included in the business investment, namely, accounts receivable, $38,848; notes receivable, $20,842.77; and real estate contracts, $32,617.97; total $92,308.74.

The trial court held that the entire property, amounting in value to $342,233.67 should be equally divided between the parties, that is, each to have $171,116.83 in amount. To that end, the court awarded to the respondent the following:

| | |
|---|---|
| The home property | $13,890.16 |
| Household goods and furniture | 3,000.00 |
| Credit for one-half the value of an automobile | 900.00 |
| Cash | 15,000.00 |
| Proceeds, as collected by appellant on the accounts, notes, and contracts above mentioned, to the extent of | 67,209.84 |
| An additional amount payable by appellant in semi-annual installments of $3,500, or more | 71,116.83 |
| Total | $171,116.83 |

It will thus be seen that, of this property award, $153,-326.27 was cash or its equivalent. To secure the respondent on the item of $67,209.84, the court directed the appellant to deposit in a designated bank, to the credit of the respondent, eighty per cent of all moneys received by him on outstanding accounts, notes, and contracts, until respondent had received the full amount owing her on that item. To

secure the respondent on the item of $71,116.83, the court obligated the appellant, in the event he should dispose of either the Shelton store or the Olympia store, to pay the net proceeds of such sale to the respondent, to the extent necessary to satisfy that item. To further secure the respondent on both of these items, the court directed the appellant to furnish respondent with a balance sheet and profit and loss statement at least twice each year, and, in addition, imposed a lien in favor of respondent on certain valuable real property which, by the interlocutory order, was at the same time distributed to the appellant. All deferred payments on both of these money items were to bear interest at the rate of four per cent per annum, such interest to be likewise secured.

The court awarded the care and custody of the children to the respondent, with the right of visitation at reasonable times reserved to the appellant. With respect to the support and education of the children, the court directed that the interlocutory order provide, and it did provide, that

". . . the plaintiff [appellant], Fred A. Holm, shall pay all hospital, doctor and dental bills incurred in the care of said children, and in addition thereto that when said children, or either of them, are attending school away from the home of the defendant [respondent] that plaintiff shall pay the costs of such schooling, including the living expenses and necessary clothing for such child or children, and that plaintiff shall likewise pay to each of said children a reasonable monthly allowance to take care of their incidental expenditures, it being the purpose of the court to provide that the plaintiff shall pay for all the expenditures for the care and keep of said children save and except that defendant shall furnish the children with living quarters and board when they are actually making their home with her."

In conclusion, the court directed appellant to pay the costs of suit, including a fee of thirty-five hundred dollars for respondent's attorneys.

The facts as thus outlined are sufficient to present the legal questions here involved.

One of appellant's assignments of error is directed

to the court's allowance to the respondent of her costs and the attorneys' fee above mentioned. As heretofore indicated, the appeal was not from the entire interlocutory order, but only from that portion thereof relating to the amount and terms of the *property award* to the respondent. The matter of costs and attorneys' fee in the superior court is not involved in this appeal. For that reason, we will not consider the alleged error.

Another of appellant's assignments is that the court erred in requiring appellant to pay all costs of support, maintenance, and education of the children during their minority, except for food and shelter while they were residing in respondent's home. The same answer may be given to that assignment; and, for that reason, it will not now be further considered.

Appellant's principal contention, as shown by his remaining assignments of error, is that the court did not make an equitable division of the property (1) in that it awarded to the respondent one half of the entire property, without regard to the manner in which it was acquired; (2) in that it required him to pay interest on the unpaid balances of the amount awarded to the respondent; and (3) in that it required him to stand all expense and loss incident to the liquidation of outstanding accounts, notes, and contracts.

The rule prescribed by statute for the disposition of property in divorce actions is found in Rem. Rev. Stat., § 989 [P.P.C. § 23-23], which provides:

"In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the conditions in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, and shall make provision for the guardianship, custody, and support and education of the minor children of such marriage."

This section of the statute fixes no arbitrary, nor any hard and fast, rule by which the disposition of property between parties to a divorce action is to be determined; nor are such

questions determinable by any rule of law less general than the statutory rule itself. *Kolbe v. Kolbe,* 50 Wash. 298, 97 Pac. 236; *Leonhard v. Leonhard,* 147 Wash. 311, 265 Pac. 1118; *Van Kleffens v. Van Kleffens,* 150 Wash. 685, 274 Pac. 708. It will be noted that the statute simply, but emphatically, requires the court to make a "just and equitable" disposition of the property, having regard to the merits of the parties, the conditions in which they will be left by the divorce, the particular sources through which the property was acquired, and the burdens imposed upon it for the benefit of the children.

In the very nature of things, no two divorce actions present exactly the same issues, and each case must therefore be determined upon the basis of its own particular facts and circumstances. *Otto v. Otto,* 178 Wash. 41, 33 P. (2d) 1074; *Spaulding v. Spaulding,* 187 Wash. 689, 60 P. (2d) 1106; *Hathaway v. Hathaway,* 23 Wn. (2d) 237, 160 P. (2d) 632.

By reason of that recognized situation, the trial court is given a wide discretion in matters relating to the division and disposition of property in divorce actions, and the appellate court will not, upon review, interfere with the decision of the trial court, unless it appears from the entire record that injustice has been done or that the trial court has abused its judicial discretion. *Kolbe v. Kolbe, supra*; *Doyle v. Doyle,* 190 Wash. 533, 69 P. (2d) 805; *Kirsch v. Kirsch,* 192 Wash. 156, 73 P. (2d) 356; *Mapes v. Mapes,* 24 Wn. (2d) 743, 167 P. (2d) 405.

The term "abuse of judicial discretion" does not mean simply the decision of a case by whim, caprice, arbitrary conduct, through ulterior motive, or in willful disregard of a litigant's rights, but contemplates as well a discretion exercised upon grounds, or to an extent, clearly untenable or manifestly unreasonable. *State ex rel. Beffa v. Superior Court,* 3 Wn. (2d) 184, 100 P. (2d) 6; *State ex rel. Nielsen v. Superior Court,* 7 Wn. (2d) 562, 110 P. (2d) 645 (on rehearing, 7 Wn. (2d) 574, 115 P. (2d) 142).

With reference to the power of the court in making disposition of property in divorce cases, it is well estab-

lished in this state that all of the property of the parties, whether it be community property or separate property, is before the court, for such disposition as is just and equitable under the facts and circumstances of the particular case. *Jeffers v. Jeffers,* 199 Wash. 393, 91 P. (2d) 1005; *Luithle v. Luithle,* 23 Wn. (2d) 494, 161 P. (2d) 152.

In making a judicial property settlement between the parties, one of the criteria by which the court is to be guided is the necessitous condition of the wife and the financial ability of the husband. *Van Kleffens v. Van Kleffens, supra; Luithle v. Luithle, supra.*

With these rules in mind, we shall consider the division of property made by the trial court. It will be recalled that the value of the entire property, as fixed by the court at the time of the trial, was $342,233.67; that the court also fixed the value of appellant's assets, at the time of his marriage to respondent, at $72,836.01; and that the court awarded to the respondent exactly one half of the greater amount. In other words, the court allowed appellant nothing for his original, or separate, assets, but considered them as having lost their identity by reason of a commingling with the subsequently acquired community property; the result of this was to give the respondent not only one half of the community property, but, also, one half of appellant's separate property.

It is conceded by respondent that appellant's business activities and methods continued, without change, after the marriage exactly as they had been conducted before that event. It clearly appears from the evidence that the nature of appellant's business was such as to require a large amount of capital; that his working capital at the time of his marriage amounted to $72,836.01; and that the latter amount was needed, and was used, for a continued successful operation of the business as a whole. It is beyond the realm of dispute that this original investment, which was appellant's separate property, was an element essential to the continuance of the business as it then existed, and that the capital so invested was a prime factor in the creation and establishment of the wealth that has since been realized. The

record also shows that, during the period of the marriage, there has been withdrawn from the business, for the personal use of appellant and his family, a total amount of $94,305.67, or an average of $4,715 a year.

While, in a sense, it may be said, as was determined by the trial court, that the original assets, considered as separate property, were commingled with similar assets acquired as community property, it is nonetheless true that the subsequent acquisitions were founded upon the original investment. There is no contention here by the respondent that there was ever any substantial loss in the business which could be said to have absorbed what appellant separately and originally contributed; on the contrary, the record shows that the net worth of the business has increased steadily, year by year, from 1927 to the time of the trial of this action.

If the amount of appellant's separate investment, $72,836.01, be deducted from the amount of the present total assets, there will be left, in value, the total sum of $269,397.66, one half of which, $134,698.83, will be realized by the respondent, on the basis of the equal division made by the trial court.

This is not a case where, in order to make adequate provision for the necessitous condition of the wife, the court is constrained to take from the husband his separate property. In this instance, the community property, equally divided, is adequate for that purpose. Respondent is in the prime of life, being approximately forty-two years of age, and, so far as the record discloses, enjoys good health. The expense of supporting and educating the minor children is placed upon the appellant, and liberal provisions have been made for that purpose. The costs of suit, including the attorneys' fees, have also been imposed upon the appellant.

The instant case is more nearly like the case of *McNary v. McNary*, 8 Wn. (2d) 250, 111 P. (2d) 760. It appears that in that case the trial court lumped together the separate property and the community property, and then made substantially an equal division of the entire property between the parties. On appeal, this was held to be error,

and the interlocutory order was modified to the extent of charging against a community-operated business the separate investment made therein by one of the spouses at the time of its purchase; and then directing that the remainder of the community property be equally divided between the parties.

Stronger reason exists in the case at bar for making such a disposition of the property than existed in the *McNary* case, for here the community property, of which the respondent is to receive one half, amounts to $269,397.66, while there it amounted to only $17,600. Here, the respondent can be amply provided for out of the community property, without invading the separate property of the appellant. We consider the division made by the trial court unjust and inequitable in so far as it awarded to the respondent a portion of what was appellant's separate property.

■ Appellant next contends that the award made by the trial court should not have carried interest on the unpaid balances. We cannot agree with that contention. The record discloses, by appellant's own testimony, that his invested capital earns approximately ten per cent per annum. Since he has the present use of the funds representing respondent's interest in the property, to the extent of the unpaid balances owing by him, he cannot rightly object to paying respondent the lesser rate of four per cent, allowed by the court.

Appellant further contends that he should not be obligated to stand the entire expense incident to the collection of the accounts receivable and the losses incident to the liquidation thereof. The evidence in the case does not satisfactorily establish what such expense will amount to, nor that, in fact, there will be any losses. Moreover, appellant will continue in possession of a lucrative business, and any such contingencies as suggested by him are of minor consideration.

One other matter remains to be considered. Sometime after the taking of the appeal, the trial court entered a supplemental order directing the appellant to pay to the respondent, within ten days after the service of the order,

the following amounts: three hundred fifty dollars for the support of the respondent and the children, and a like amount each month thereafter, pending the appeal; five hundred dollars for expenses incident to vacation trips made by the children during the preceding summer; one hundred dollars for suit money on the appeal; and one thousand dollars additional attorneys' fee in this court. ·

█ In his reply brief, appellant has assigned errors touching that order and the various items thereof. The difficulty with which we are here confronted is that the record presented to us on the instant matter is imperfect and incomplete. All that we have before us with reference thereto is a supplemental transcript which includes only appellant's answer to respondent's petition for the allowances (the petition itself not being included) and the order of the trial court, which recites that a hearing was held on respondent's petition, at which respective counsel were present. What evidence was introduced at the hearing, whether by verbal testimony or by affidavits, we do not know, for it has not in any way been brought here.

It does seem strange that the trial court should have allowed respondent anything for her support, since the interlocutory order made no provision in that respect. The allowance for vacation trips by the children also seems excessive. However, we are not informed with reference to the facts upon which these two allowances were made, and hence are not in a position to pass upon them.

█ As to the allowance of suit money on appeal, we think it was proper. With regard to the attorneys' fee in this court, we do have knowledge upon that subject, and we think the amount allowed was too great. That allowance will be decreased to five hundred dollars.

The interlocutory order and the supplemental order will be modified to the extent hereinabove indicated. In all other respects, they will stand affirmed. Neither party will recover costs on the appeal.

MALLERY, C. J., ROBINSON, JEFFERS, and HILL, JJ., concur.