[No. 23015–8–I.   Division One.   January 8, 1990.]

VERNON COGGLE, *Appellant,* v. LAWRENCE W. SNOW,
ET AL, *Respondents.*

500

*Harvey Grad,* for appellant.

*David R. Antal* and *Schwabe, Williamson, Wyatt & Lenihan,* for respondents.

RINGOLD, J.*—The plaintiff, Vernon Coggle, appeals an order granting the motion for summary judgment of Dr. Lawrence W. Snow, the defendant in a medical malpractice action. We reverse and remand for trial.

In May 1983, Coggle was treated for low back pain by Dr. Snow, an orthopedic surgeon, at Valley General Hospital (now Valley Medical Center). A Methadone "pain cocktail"

---

*Judge Solie M. Ringold is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150 and CAR 21(c).

was administered to the plaintiff. Several days later Coggle developed respiratory symptoms diagnosed as adult respiratory distress syndrome (ARDS). Dr. Snow then called in Dr. Donald Mitchell, an internist, to treat Coggle's respiratory problem.

In November 1985, Coggle was again admitted to Valley General Hospital for treatment of an ankle fracture. Several times during his treatment, when asked whether he had any known allergies, Coggle responded in the negative. Dr. Snow performed surgery on Coggle's ankle on November 16, 1985. Because of the plaintiff's continuing complaints of pain, Dr. Snow again authorized the administration of a "pain cocktail." Several days later Coggle developed respiratory symptoms subsequently diagnosed as ARDS and was treated by Dr. Mitchell.

In July 1986, Coggle commenced this action for negligence, lack of informed consent, and strict liability, seeking damages for pain, medical expenses, and loss of earnings attributed to the administration of the "pain cocktail" in November 1985. On August 12, 1988, the defendant filed a motion for summary judgment noted for hearing August 26, 1989. In support of the motion Snow filed his own affidavit and portions of Dr. Mitchell's deposition. Snow stated: (1) Coggle, when asked by medical staff whether he had any known allergies, stated that he did not; (2) as an orthopedic surgeon Snow was neither trained nor experienced in the diagnosis and treatment of respiratory disorders and he thus relied on Dr. Mitchell's expertise in both instances in treating Coggle's respiratory illness; (3) Snow is not required, according to the applicable standard of care, to advise a patient of the nature of prescribed medications when the patient has denied having allergies; (4) Snow had no reason to believe in 1985 that administering the pain cocktail would cause another ARDS episode; and (5) he had informed Coggle of all material risks involved in the procedure. Referring to the 1983 episode, Dr. Mitchell stated in his deposition: "Although I raise the possibility of reaction to the drugs, the drugs that he had been given were not

ones that were at least commonly associated with this", concluding that "more likely than not," viral pneumonitis had caused the 1983 ARDS episode. He also stated that he reached a "tentative conclusion" after the 1985 episode that the ARDS was caused by the pain cocktail.

On August 19, 1988, Harvey Grad filed a notice of association as counsel and a motion for continuance pursuant to CR 56(f).[1] In support of the motion for continuance, counsel stated:

1. *Declarant.* I am Harvey Grad, attorney for plaintiff in this motion. Matt L. Alexander, plaintiff's attorney, who is in the process of retirement and has moved from his downtown office, has asked that I substitute as plaintiff's counsel. I met with Mr. Alexander on 16 August 1988, and on that same date, called plaintiff's physician. My declaration is based upon that which I learned that date.

2. *Unavailability of Affidavits.* Mr. Alexander has prepared and transmitted to Mr. Coggle, plaintiff, a reply declaration for his execution and return for filing, in response to defendant's motion. Mr. Coggle was also seen by a Tacoma physician, whose declaration is intended to rebut that of defendant and the deposition testimony of Doctor Mitchell upon his earlier finding that the defendant breached the applicable standard of care for the administration of medication, and that such breach was the proximate cause of injuries of which plaintiff has complained. However, it was not possible to obtain his affidavit within the time required by LR 56.[2]

3. *Continuance.* The current motion date should be continued an additional thirty (30) to forty–five (45) days, because plaintiff "cannot, for reasons stated, present by affidavit facts essential to justify his opposition . . .", Civil Rule 56(f) and the court should therefore deny defendant's motion and continue this case for that reason.

---

[1]CR 56(f) states:
**"When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

[2]Former King County Local Rule 56(c)(1)(A) states in part: "The responding party must file and serve the response, including any cross–motion and all relevant materials on all parties and on the Civil Motions Coordinator at least seven (7) calendar days before the hearing."

The trial court denied the motion for continuance and granted Snow's motion for summary judgment on August 26, 1988. Coggle then filed a motion for reconsideration, supported by his own declaration and that of a Tacoma pulmonary specialist, Dr. James Billingsley. Billingsley stated that he examined Coggle in March 1988, and reviewed Valley General Hospital's records of Coggle's treatment in 1983 and 1985. He stated that in 1983 "Doctor Mitchell noted the association between the onset of [ARDS] and the methadone prescribed by Doctor Snow, i.e., the 'pain cocktail'." Billingsley also stated:

> Doctor Snow knew, or should have known of the prior adverse reaction to this medication. He should have checked the records from the prior admission to establish no adverse consequence from medications or treatment previously administered. Under the circumstances, Doctor Snow breached the standard of care required of a reasonably prudent practitioner possessing the degree of skill, care and learning possessed by other members of the same profession in this state.

Billingsley stated further that Coggle's injuries were a result of the administration of the pain cocktail which "posed a known risk of injury."

Coggle's declaration submitted in support of the motion for reconsideration stated that he does not have any allergies but that, if he had been specifically asked regarding adverse drug reactions, he would have informed Snow and other hospital personnel of the effect of the pain cocktail administered in 1983. Coggle further stated that he was advised by Dr. Mitchell in 1983 that his respiratory problems at that time were probably due to an allergic reaction to the pain cocktail. He would not have requested a pain cocktail or accepted such medication had he been aware of its nature.

The trial court denied Coggle's motion for reconsideration. Coggle appeals the summary judgment dismissing his action and the denial of his motions for a continuance and for reconsideration. We conclude that without consideration of the declarations of Dr. Billingsley and Coggle there was not a sufficient showing to establish a genuine issue of

material fact, necessary to survive the summary judgment motion. We hold, however, that the trial court erred in denying the motion for a continuance and for reconsideration.

## JUDICIAL DISCRETION

The ruling on the motions for a continuance and for reconsideration is within the discretion of the trial court and is reversible by an appellate court only for a manifest abuse of discretion. *Turner v. Kohler,* 54 Wn. App. 688, 693, 775 P.2d 474 (1989); *Perry v. Hamilton,* 51 Wn. App. 936, 938, 756 P.2d 150 (1988).

The rule is simply stated, but the standard by which to determine whether a trial court has properly exercised its discretion is in disarray in this state. Thus it is necessary to review this standard.

Ruggero J. Aldisert, in *The Judicial Process* (1976), at page 742, states:

> Bouvier's Dictionary defines discretion as "that part of the judicial function which decides questions arising in the trial of a cause, according to the particular circumstances of each case, and as to which the judgment of the court is uncontrolled by fixed rules of law. The power exercised by courts to determine questions to which no strict rule of law is applicable but which, *from their nature, and the circumstances* of the case, are controlled by the personal judgment of the court." Hart and Sacks define certain other types of discretion as "the power to choose between two or more courses of action each of which is thought of as permissible". . . . Knowing simply that one is invested with discretion does not tell much. The crucial inquiry, necessarily, is the extent of the discretionary power conferred. Thus, while the recent commentators have outlined sophisticated nuances, it remains for the courts to calibrate its full measure.

Justice Benjamin Cardozo in his series of lectures collected in *The Nature of the Judicial Process* 141 (1921), reflected on the nature of judicial discretion:

> The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight–errant roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated

benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to "the primordial necessity of order in the social life." Wide enough in all conscience is the field of discretion that remains.

The precise meaning of discretion is affected by the reasons and the purposes for which the decisionmaker is to exercise his or her discretion. Discretion may mean that the decisionmaker is not bound by standards; on the other hand, it may mean simply that the decisionmaker must exercise judgment in applying certain standards or that he or she has final authority in the matter, without review by other authority. *See* Dworkin, *The Model of Rules,* 35 U. Chi. L. Rev. 14, 32–34 (1967). Another scholarly commentator has stated that the central idea of discretion is *choice*: the court has discretion in the sense that there are no "officially wrong" answers to the questions posed. Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above,* 22 Syracuse L. Rev. 635, 636–37 (1971).

█ In this context, we turn to Washington case law concerning the exercise of judicial discretion. In *State ex rel. Ross v. Superior Court,* 132 Wash. 102, 107, 231 P. 453 (1924), the court, in considering a motion for change of venue, stated that "discretion in this regard is never arbitrary. It must, like discretion in other matters, be based on reason." The court in *State ex rel. Beffa v. Superior Court,* 3 Wn.2d 184, 100 P.2d 6 (1940) held that a writ of mandamus will not issue to control an exercise of judicial discretion absent a manifest abuse of discretion. The court further held that "it can safely be said that abuse of judicial discretion is not shown unless the discretion has been exercised upon grounds, or to an extent, clearly untenable or manifestly unreasonable." *Beffa,* at 190. *Accord, State ex rel. Nielsen v. Superior Court,* 7 Wn.2d 562, 579, 110 P.2d 645, 115 P.2d 142 (1941); *Holm v. Holm,* 27 Wn.2d 456, 463, 178 P.2d 725 (1947). This standard, like that articulated by the above quoted commentators, requires decisionmaking founded upon principle and reason.

An imprudent standard for the exercise of judicial discretion seems to have been introduced in *Rehak v. Rehak,* 1 Wn. App. 963, 465 P.2d 687 (1970). A husband appealed from a divorce decree, arguing that the award of property to the wife was an abuse of discretion by the trial court. The court first noted that "[s]ome apparent reason must be present for the action of the court to constitute a proper exercise of discretion in this type of case." *Rehak,* at 965. The court concluded by adopting a test from *Delno v. Market St. Ry.,* 124 F.2d 965, 967 (9th Cir. 1942), that discretion is abused:

> when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where *no reasonable man would take the view adopted by the trial court.* If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

(Italics ours.) *Rehak,* at 965. *Rehak* introduced into Washington case law a purported standard of abuse of discretion which cannot be applied. Instead of examining the reasons for the decision, this standard focuses on the reasonableness of the decisionmaker. But to say that an abuse of discretion exists when "no reasonable man, woman or judge" would have taken the view adopted by the trial court is not accurate. It cannot justly be said that every trial judge reversed by the appellate court or Supreme Court for an abuse of discretion is less reasonable than the reversing judges. "An experienced and reasonable trial judge does not suddenly become 'unreasonable' on a particular day." *State v. Creekmore,* 55 Wn. App. 852, 875, 783 P.2d 1068 (1989) (Forrest, J., concurring). Strict application of such a standard would mean that an appellate court would never reverse without a hearing to determine the general reasonableness of the judge.

In *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 482 P.2d 775 (1971), the Supreme Court sought to temper the "reasonable man" standard:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound

judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously . . . . Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.

*Junker,* at 26. Nevertheless, numerous decisions since 1971 have persisted in applying the *Delno–Rehak* standard, sometimes juxtaposing it with the *Junker* standard. *E.g., Singleton v. Frost,* 108 Wn.2d 723, 730, 742 P.2d 1224 (1987). We take this occasion to disapprove the *Delno–Rehak* standard. The proper standard is whether discretion is exercised on untenable grounds or for untenable reasons, considering the purposes of the trial court's discretion.

■ With these principles in mind, we consider whether the trial court properly exercised its discretion in this case. CR 56(f) states that where affidavits of the party opposing the motion for summary judgment show reasons why the party cannot present facts justifying its opposition, the court may refuse the motion for summary judgment or order a continuance in order to obtain affidavits or the depositions. Where a party knows of the existence of a material witness and shows good reason why the witness' affidavit cannot be obtained in time for the summary judgment proceeding, the court has a duty to give the party a reasonable opportunity to complete the record before ruling on the case. However, the trial court may deny a motion for a continuance when (1) the moving party does not offer a good reason for the delay in obtaining the evidence; (2) the moving party does not state what evidence would be established through the additional discovery; or (3) the evidence sought will not raise a genuine issue of fact. *Turner v. Kohler, supra* at 693. In considering the application of CR 56(f), we note that the trend of modern law is to interpret court rules and statutes to allow decision on the merits of the case. *Weeks v. Chief of Wash. State Patrol,* 96 Wn.2d 893, 895–96, 639 P.2d 732 (1982). In addition, the Superior Court Civil Rules are to be construed to secure the just,

speedy, and inexpensive determination of every action. CR 1.

The record reveals the reason for Coggle's inability to produce the declarations in time for the summary judgment hearing. Coggle's new counsel filed the notice of association of counsel 1 week after Snow filed the motion for summary judgment. He had not had time to follow through on work begun by previous counsel. Coggle fulfilled the other criteria for a continuance by identifying the evidence he sought and explaining that the declarations would rebut the defense expert testimony. *Turner*, at 693.

■ The primary consideration in the trial court's decision on the motion for a continuance should have been justice. The client, Coggle, after obtaining new counsel, should not be penalized for the apparently dilatory conduct of his first attorney. *See Simonson v. Fendell*, 34 Wn. App. 324, 330–32, 662 P.2d 54 (1983), *rev'd on other grounds*, 101 Wn.2d 88, 675 P.2d 1218 (1984). The court should have viewed the motions in the context of the new legal representation. We fail to see how justice is served by a draconian application of time limitations here. The case had been filed 2 years earlier. Little discovery had been pursued. The process could have been speeded by the court after a short continuance and the consideration of Coggle's materials in response to the motion for summary judgment. Snow has not argued that he would have suffered prejudice if the court had granted a continuance, nor do we perceive any prejudice. We cannot discern a tenable ground or reason for the trial court's decision. We hold that the trial court improperly exercised its discretion in denying the motion for a continuance.

It is unclear from the record whether the court considered the merits of the materials submitted by Coggle in support of his motion for reconsideration. If the court, after failing to grant the continuance, also refused to evaluate the declarations of Coggle and Dr. Billingsley and their impact on the motion for summary judgment, then this was an abuse of discretion flowing from the court's initial denial

of the motion for a continuance.[3] In the alternative, if the court considered the declarations and concluded they did not raise an issue of material fact, then we hold, in accord with the following analysis, that the court erred as a matter of law and we reverse on that basis.[4]

## SUMMARY JUDGMENT

■ The issue is whether the material presented by the plaintiff in support of his motion for reconsideration created a genuine issue of material fact. In reviewing an order of summary judgment, the appellate court engages in the same inquiry as thenl trial court. *Hontz v. State*, 105 Wn.2d 302, 311, 714 P.2d 1176 (1986). Under CR 56(c), a motion for summary judgment is granted only:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

"A material fact is one upon which the outcome of the litigation depends, in whole or in part." *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980). The party moving for summary judgment has the burden of showing that there is no issue of material fact; the court must resolve all reasonable inferences from the evidence against the moving party and will grant the motion only if reasonable people could reach but one conclusion. *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 108, 751 P.2d 282

---

[3]Because the trial court abused its discretion in denying the motion for a continuance, this case is distinguishable from recent cases which hold that on a motion for reconsideration the court cannot consider evidence that could have been discovered prior to the trial court's ruling. *Adams v. Western Host, Inc.*, 55 Wn. App. 601, 608, 779 P.2d 281 (1989); *Richter v. Trimberger*, 50 Wn. App. 780, 785, 750 P.2d 1279 (1988).

[4]*Vant Leven v. Kretzler*, 56 Wn. App. 349, 783 P.2d 611 (1989), recently decided by this court, raised similar issues regarding motions for a continuance and reconsideration in a summary judgment case. That case is distinguishable. *Kretzler* did not involve newly hired counsel. Furthermore, the affidavit submitted in support of the motion for a continued opportunity did not adequately state what further evidence was sought. Finally, the physician's affidavit submitted in support of the motion for reconsideration did not raise a material issue of fact.

(1988). Where a motion for summary judgment is properly supported, the burden shifts to the party opposing the motion to set forth specific facts showing there is a genuine issue for trial. CR 56(e); *Graves v. P.J. Taggares Co.*, 94 Wn.2d 298, 302, 616 P.2d 1223 (1980).

The plaintiff in a medical negligence action must produce evidence showing injury caused by the health care provider's failure to exercise that degree of care, skill, and learning expected of a reasonably prudent practitioner in the state of Washington RCW 7.70.040; *McKee v. American Home Prods. Corp.*, 113 Wn.2d 701, 782 P.2d 1045 (1989). The plaintiff generally must offer proof of these elements through the testimony of expert medical witnesses. *Harris v. Groth*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983).

A. Evidence Before Dismissal.

Snow met his initial burden on summary judgment by establishing that his actions conformed to the applicable standard of care. We reject Coggle's contention that Snow's affidavit is insufficient under *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 757 P.2d 507 (1988) and *Nicholson v. Deal*, 52 Wn. App. 814, 764 P.2d 1007 (1988). We have elsewhere distinguished those cases as involving "[virtually] res ipsa loquitur" situations requiring further factual explanation from the defendant physician. *Turner v. Kohler, supra* at 692 n.2. Furthermore, Snow met his burden by pointing out to the trial court the absence of evidence to support the nonmoving party's case. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

B. Coggle's Responsive Declarations.

The remaining question is whether Coggle's response to the motion for summary judgment raised a genuine issue for trial. Snow contends that Dr. Billingsley's declaration is insufficient to raise a genuine issue of material fact because he does not state that Dr. Snow deviated from the accepted standard of medical care for an orthopedic surgeon when he

relied upon Dr. Mitchell's belief that the 1983 ARDS episode was caused by a virus. We note that the courts indulge a certain degree of leniency in reviewing the affidavits of the nonmoving party. *PUD 1 v. WPPSS,* 104 Wn.2d 353, 361, 705 P.2d 1195 (1985). Upon review of the entire declaration, we believe that, while not a model of legal precision, Dr. Billingsley's declaration successfully raises an issue of fact as to Snow's compliance with the standard of care and causation.

Dr. Billingsley stated that in 1983 Dr. Mitchell "noted" the possible association between the prior cocktail and the ARDS. It is unclear from this declaration whether Billingsley means that the hospital record contains written notations by Mitchell of the possible association between ARDS and the medication or merely refers to Mitchell's deposition.[5] However, Dr. Billingsley also clearly stated (1) Dr. Snow knew or should have known of the prior adverse reactions to the medication by referring to the medical records, and (2) Dr. Snow breached the "standard of care required of a reasonably prudent practitioner . . . in this State" in administering the pain cocktail. Considering the facts and all reasonable inferences from the facts in the light most favorable to Coggle, we conclude these statements amount to an assertion that Snow deviated from the accepted standard of medical care for an orthopedic surgeon. In conjunction with assertions in Dr. Mitchell's deposition and Coggle's own declaration that the possibility of a drug reaction was raised in 1983, Dr. Billingsley's declaration is sufficient to raise material issues of fact as to whether Dr. Snow breached the standard of care in treating Coggle.

■ We also conclude that Coggle's response was sufficient to defeat the motion for summary judgment as to the informed consent claim. The elements of a cause of action under the informed consent doctrine are: (1) the physician

---

[5]Portions of the hospital record in the appellate record are illegible.

failed to inform the patient of a material risk of the proposed course of treatment, (2) the patient consented to the proposed treatment without being aware of or fully informed of the material risks and alternatives, (3) a reasonable, prudent patient would not have consented to the treatment when informed of the material risks, and (4) the treatment caused injury to the patient. RCW 7.70.050; *Crawford v. Wojnas,* 51 Wn. App. 781, 783, 754 P.2d 1302 (1988). Dr. Billingsley stated in his declaration that (1) a "reasonable physician" would have attached significance to the association between the 1983 ARDS episode and the pain cocktail, (2) the medication posed a known risk of injury, (3) Coggle was not advised of the risk of an adverse reaction, (4) a reasonably prudent patient under these circumstances would not have consented to the treatment if informed of these facts, and (5) injury resulted from the administration of the medication. Coggle stated in his declaration that he would not have accepted a pain cocktail in 1985 because he had been told previously of his adverse reaction and that he was unaware of the nature of the medication until after the ARDS episode occurred. These declarations are sufficient to raise an issue of fact as to whether Coggle gave informed consent.

Because Coggle raises no issue relating to the strict liability claim of his complaint, we deem that claim abandoned.

Accordingly, we reverse and remand for trial on the claims of negligence and the absence of informed consent.

WEBSTER and FORREST, JJ., concur.