IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARY HEDMAN, | ) | No. 33318-3-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DR. W. DALE CRUM and ORAL | ) | |
| SURGERY PLUS, a Washington | ) | UNPUBLISHED OPINION |
| Corporation, d/b/a SURGERY PLUS | ) | |
| SOUTH, W. Dale Crum, D.D.S. PS, d/b/a | ) | |
| INLAND ORAL SURGERY, Dr. Cary | ) | |
| Simonds, and Dr. Jeffrey Lockwood and | ) | |
| Dr. Jeffrey Lockwood DDS FACP, INC., | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, A.C.J. — Mary Hedman appeals the trial court's summary

judgment dismissal of her medical negligence claims. She argues she produced expert

medical testimony establishing that the defendants breached the standard of care and this

breach proximately caused her injuries. She also argues the trial court abused its

discretion when it denied her CR 56(f) motion to continue the summary judgment

hearing. We disagree and affirm the summary dismissal of her claims.

## FACTS

Because the trial court dismissed this case on summary judgment, we present the facts and all reasonable inferences in the light most favorable to Ms. Hedman, the nonmoving party.

In October 2009, Ms. Hedman became a patient of Oral Surgery Plus, an oral surgery practice. Dr. Dale Crum and Dr. Cary Simonds were both shareholders of Oral Surgery Plus. Ms. Hedman was Dr. Crum's patient. Ms. Hedman told Dr. Crum she wanted to have her remaining lower teeth extracted. She then wanted upper and lower "'all on four'" bridges placed, which are full arch dental prostheses supported by four implants. Clerk's Papers (CP) at 281.

On November 16, 2009, Dr. Crum installed four implants in Ms. Hedman's mouth. On November 24, he installed temporary dentures.

The next day, Ms. Hedman called Oral Surgery Plus. Dr. Crum was on vacation and Dr. Simonds was covering. Dr. Simonds answered Ms. Hedman's call. Ms. Hedman said she was in pain and that her Oxycodone prescription Dr. Crum had given her had been stolen. Dr. Simonds called Dr. Crum and then agreed to hand deliver another prescription to Ms. Hedman that evening. Another doctor met her with the prescription.

Dr. Simonds called Ms. Hedman the next day and asked if she was doing better. She said she was, and Dr. Simonds told her to call back if she had any other questions.

Dr. Crum treated Ms. Hedman throughout December 2009. Ms. Hedman became dissatisfied with Dr. Crum's treatment and their relationship deteriorated. On January 8,

2

2010, Dr. Crum dismissed Ms. Hedman from the practice. He agreed to see her for emergency services for the next 30 days. He told her to find a new oral surgeon as soon as possible.

On January 25, Ms. Hedman and her son went to Oral Surgery Plus to see Dr. Simonds. She complained of "'gingival tissue trauma and pain.'" CP at 282. Dr. Simonds examined her and determined that the sites where Dr. Crum had operated were healthy with no gingivitis. Ms. Hedman requested pain medication. Dr. Simonds advised her to use hot and cold packs for pain relief. Dr. Simonds's only involvement in Ms. Hedman's care consisted of the two telephone calls and the office visit. Dr. Simonds did not perform any dental work on her.

Ms. Hedman then sought a second opinion from Dr. Kenji Higuchi who, like Dr. Crum, is an oral surgeon. Dr. Higuchi referred Ms. Hedman to Dr. Jeffrey Lockwood, a prosthodontist, for a prosthodontic assessment. The purpose of the referral was to evaluate some concerns related to Dr. Crum's treatment. Dr. Lockwood treated Ms. Hedman from February 2010 to November 2011. Dr. Lockwood believed Ms. Hedman's dentures needed to be replaced and remade with additional implants. He then made a provisional denture. In December 2011, Dr. Lockwood determined it was inappropriate to continue further restorative treatment and sent Ms. Hedman a letter explaining this.

In 2012, two different attorneys representing Ms. Hedman contacted Oral Surgery Plus. One requested Ms. Hedman's medical records, and the other alleged medical

negligence and requested prelitigation mediation under RCW 7.70.110. In June 2013, a third attorney contacted Dr. Crum and requested mediation.

PROCEDURE

On August 26, 2013, Ms. Hedman, through her third attorney, filed a complaint against Dr. Crum, Inland Oral Surgery, Dr. Simonds, Oral Surgery Plus, Dr. Lockwood, and Dr. Jeffrey Lockwood DDS FACP, Inc. She brought claims under the theories of medical negligence, breach of promise, lack of informed consent, and violation of the Consumer Protection Act (CPA), chapter 19.86 RCW. She also alleged Oral Surgery Plus was vicariously liable for Dr. Crum's and Dr. Simonds's negligence.

In February 2014, Dr. Crum and Dr. Simonds moved for summary judgment, arguing that Ms. Hedman failed to support her claims with competent expert testimony. Dr. Lockwood later moved for summary judgment. On April 4, Ms. Hedman's third attorney filed a notice of intent to withdraw, declaring that his approach and Ms. Hedman's approach to the case had diverged to the point where it was suitable for her to obtain new counsel. The trial court continued the pending summary judgment motions to August 15, finding that this would be "sufficient to allow Ms. Hedman time to find replacement counsel." CP at 343.

On August 8, a fourth attorney appeared on behalf of Ms. Hedman for the limited purpose of responding to the pending summary judgment motions. This attorney moved to stay in lieu of responding to defendants' motions for summary judgment or, alternatively, to continue the summary judgment proceedings pursuant to CR 56(f). The

4

attorney declared that no discovery had taken place on Ms. Hedman's behalf and her previous attorney had not responded to defendants' motions for summary judgment. The trial court continued defendants' pending summary judgment hearing to October 29, and continued the trial date to April 6, 2015. Shortly after obtaining the continuance, the fourth attorney informed defendants that he was no longer representing Ms. Hedman. He told Ms. Hedman's son he could not afford to take the case.

On October 17, a fifth attorney filed a declaration regarding his contact with Ms. Hedman and her son. He declared he could not respond to defendants' summary judgment motions by the deadline, but believed the case justified a good cause continuance to allow him to adequately prepare. Several days later, Ms. Hedman moved pro se to continue the summary judgment hearing so that the fifth attorney could represent her.

Ms. Hedman also filed a pro se motion opposing defendants' motions for summary judgment. Ms. Hedman attached a declaration from Dr. Kirsten Robinson, one of her treating physicians, declaring that Ms. Hedman suffers from a chronic pain disorder proximately caused by Dr. Crum's dental care. She also attached a letter from Dr. Doug Brossoit. Dr. Brossoit stated he had been Ms. Hedman's dentist since January 2012. He also stated Dr. Crum's treatment fell below the standard of care for an implant supported full mouth rehabilitation.

Ms. Hedman also attached a letter Dr. Lockwood sent to the Washington Dental Quality Assurance Commission (DQAC) on July 24, 2010. Dr. Lockwood's letter stated:

5

In the case of Dr. Crum, who is a Board Certified Oral and Maxillofacial Surgeon, I believe he was operating outside of his specialty and outside of his area of competency when he assumed the role of the restorative dentist in this most challenging case. Due to his apparent lack of knowledge of basic prosthodontic principals [sic], he designed and created an implant restoration that is impossible to achieve that would satisfy the patient's desire to have fixed/screw retained dentures.

. . . .

. . . I will say that I am sure Dr. Crum is a fine oral surgeon, but he is not a restorative dentist and ethically should not be practicing outside of his specialty. His restorative treatment of Mrs. Hedman is, in my opinion, below the standard of care.

CP at 85-86.

On October 28, 2014, Ms. Hedman filed a declaration from Dr. Brossoit. Dr. Brossoit declared that he had treated Ms. Hedman. He declared that Dr. Crum, Dr. Simonds, and Dr. Lockwood had all breached the standard of care, and their breaches caused Ms. Hedman's injuries.

On October 29, 2014, the trial court heard defendants' motions for summary judgment. The trial court dismissed Ms. Hedman's CPA claims against all defendants, her breach of promise claims against all defendants, her corporate negligence claims, and her informed consent claim against Dr. Simonds. The court found that Dr. Brossoit's declaration raised a material issue of fact and declined to dismiss Ms. Hedman's medical negligence claims. The court reserved ruling on Ms. Hedman's lack of informed consent claims against Dr. Crum and Dr. Lockwood.

On November 13, a sixth attorney appeared on behalf of Ms. Hedman. This attorney took Dr. Higuchi's deposition. In the deposition, Ms. Hedman's attorney read

6

Dr. Lockwood's July 24, 2010 letter to Dr. Higuchi. He asked Dr. Higuchi if he agreed with the portion in which Dr. Lockwood wrote that Dr. Crum was operating outside of his specialty and area of competency when he assumed the role of a restorative dentist. Dr. Higuchi responded that he did not know Dr. Crum's experience in prosthetic or restorative dentistry, and that if he had adequate training he could be qualified. Dr. Higuchi added that it would generally be unethical for an oral surgeon to do restorative procedures.

Ms. Hedman's attorney then asked Dr. Higuchi if he agreed with the second part of Dr. Lockwood's letter, in which he wrote that Dr. Crum "designed and created an implant restoration that is impossible to achieve that would satisfy the patient's desire to have fixed/screw retained dentures." CP at 153. Dr. Higuchi responded:

> [I]n evaluating the surgery that was performed on the lower jaw, I think there was a surgical misdiagnosis of failure of reducing enough of the alveolar bone.
> There should have been more modification of the lower jaw so there would not have been the issues and concerns relative to the vertical dimension that we've talked about.

CP at 153. Dr. Higuchi later testified that he did not intend to render standard of care opinions against Dr. Crum.

Dr. David Bot's deposition was also taken. Dr. Bot testified that Ms. Hedman was diagnosed with depression and somatic symptom disorder with pain. Defense counsel asked Dr. Bot if he was able to opine regarding what degree of Ms. Hedman's depression

7

was caused by the dental treatment. Dr. Bot testified that "probably 66 to 75 percent would be associated with the dental issue." CP at 199.

On January 7, 2015, defendants deposed Dr. Brossoit. In his deposition, Dr. Brossoit testified he had not fully reviewed Ms. Hedman's dental records at the time he signed his prior declarations. He also testified Ms. Hedman and her son wrote the bulk of the declarations and that he regretted signing the declarations without having fully reviewed Ms. Hedman's dental records. Contrary to his prior declaration, he testified Dr. Simonds and Dr. Lockwood did not violate the standard of care. He did not change his opinion that Dr. Crum's treatment fell below the standard of care and that this caused Ms. Hedman's injuries. He stated prosthesis was in his expertise. He later stated prosthodontics is a specialty that requires extra schooling, that he was a general dentist and did not have training in prosthodontics, and that he never held himself out to be a prosthodontist.

Following Dr. Brossoit's deposition, all three defendants again moved for summary judgment.

On January 28, Ms. Hedman's sixth attorney filed a notice of intent to withdraw as Ms. Hedman's counsel. He moved to continue the April 6, 2015 trial date, arguing that Ms. Hedman needed a continuance so she could retain experts to review the medical and dental records and render opinions regarding the standard of care and proximate causation. He noted that "Dr. Brossoit's testimony concerning standard of care still

stands with regard to summary judgment; however, it's [sic] tactical use at trial has been seriously eroded, if not vaporized, by his recent deposition." CP at 718.

The sixth attorney also moved under CR 56(f) to continue the summary judgment hearing so Ms. Hedman could obtain the affidavits of expert witnesses. He attached numerous exhibits to this motion, including Dr. Higuchi's deposition testimony, Dr. Higuchi's second opinion consult note, Dr. Higuchi's curriculum vitae, and Dr. Lockwood's July 24, 2010 letter to DQAC.

On February 13, a seventh attorney, Dayle Andersen, filed a notice of appearance on behalf of Ms. Hedman. Mr. Andersen submitted a declaration and attached numerous exhibits, including several sets of interrogatories and the deposition testimonies from Dr. Robinson, Dr. Bot, and Dr. Higuchi. Mr. Andersen also attached declarations from Dr. Will Chung and Dr. Edmond Truelove. The declarations of Dr. Chung and Dr. Truelove were nearly identical. They both declared:

> I have been retained as an expert in the matter of Hedman v. Oral Surgery Plus for purposes of evaluating and determining Ms. Hedman's injuries, and . . . the relation of the injuries, if any, to the dental procedures conducted by the defendants.
>
> I will need time to review the complete records and images from Ms. Hedman's care.

CP at 203-04, 205-06. The trial court considered attorney Andersen's declaration.

At the summary judgment hearing, the trial court denied Ms. Hedman's CR 56(f) motion to continue defendants' summary judgment motions. The trial court granted summary judgment in favor of all defendants and dismissed Ms. Hedman's claims with

prejudice. The trial court dismissed the case because it found Ms. Hedman could not demonstrate, by expert testimony, a breach of the applicable standard of care. The day after the trial court entered its orders, Mr. Andersen filed a notice of intent to withdraw.

Ms. Hedman appeals.

## ANALYSIS

### A. INSUFFICIENT EXPERT TESTIMONY OF STANDARD OF CARE AND CAUSATION

Ms. Hedman argues the trial court erred in granting summary judgment for Dr. Crum on the grounds that she could not demonstrate, by expert testimony, a breach of the applicable standard of care. Ms. Hedman focuses her argument solely on Dr. Crum's alleged medical negligence. She does not argue the trial court erred in granting summary judgment for Dr. Lockwood or Dr. Simonds.

#### 1. *Standard of review*

This court reviews a summary judgment order de novo, engaging in the same inquiry as the trial court. *Davies v. Holy Family Hosp.*, 144 Wn. App. 483, 491, 183 P.3d 283 (2008). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact is one the outcome of the litigation depends on, in whole or in part. *Coggle v. Snow*, 56 Wn. App. 499, 509, 784 P.2d 554 (1990). This court views all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Id.* Summary judgment is

10

appropriate only if reasonable persons could reach but one conclusion from all the evidence. *Id.*

On a summary judgment, the trial court does not weigh evidence or assess witness credibility. *Barker v. Advanced Silicon Materials, LLC*, 131 Wn. App. 616, 624, 128 P.3d 633 (2006). This court also does not do so on appeal. *Id.* This court's "'job is to pass upon whether a burden of production has been met, not whether the evidence produced is persuasive. That is the jury's role, once a burden of production has been met.'" *Id.* (quoting *Renz v. Spokane Eye Clinic, PS*, 114 Wn. App. 611, 623, 60 P.3d 106 (2002)).

A defendant moving for summary judgment has the initial burden of showing that there is no issue of material fact. *Id.* The defendant can meet this burden "by pointing out that the plaintiff lacks competent medical evidence to make out a prima facie case of medical malpractice." *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 22, 851 P.2d 689 (1993). Once the defendant does this, the burden shifts to the plaintiff to produce an affidavit from a qualified expert witness that alleges specific facts establishing a cause of action. *Id.* at 25.

Evidence submitted in opposition to summary judgment must be admissible. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 141, 331 P.3d 40 (2014). "CR 56(e) requires that evidence offered in support of or in opposition to a motion for summary judgment be in the form of sworn affidavits or declarations made under penalty of perjury." *Young Soo Kim v. Choong-Hyun Lee*, 174 Wn. App. 319, 326, 300 P.3d 431 (2013). Moreover,

"[a]ffidavits containing conclusory statements without adequate factual support are insufficient to defeat a motion for summary judgment." *Guile*, 70 Wn. App. at 25. To survive summary judgment, "expert testimony must be based on facts in the case, not speculation or conjecture." *Seybold v. Neu*, 105 Wn. App. 666, 677, 19 P.3d 1068 (2001).

### 2. *Ms. Hedman's expert medical testimony*

"Expert testimony is required when an essential element in the case is best established by an opinion that is beyond the expertise of a layperson." *Id.* at 676. In a medical malpractice case, expert testimony is generally required to establish the standard of care and to prove causation. *Id.* Thus, "to defeat summary judgment in almost all medical negligence cases, the plaintiffs must produce competent medical expert testimony establishing that the injury was proximately caused by a failure to comply with the applicable standard of care." *Id.* The standard of care is "that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances." RCW 7.70.040(1).

"To testify that the defendant has breached the applicable standard of care, 'a physician must demonstrate that he or she has sufficient expertise in the relevant specialty.'" *Davies*, 144 Wn. App. at 494 (quoting *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 229, 770 P.2d 182 (1989)). "A physician with a medical degree will ordinarily be considered qualified to express an opinion with respect to any medical

question, including questions in areas in which the physician is not a specialist, so long as the physician has sufficient expertise to demonstrate familiarity with the medical procedure or problem at issue in the action." *Id.*

i.  Dr. Lockwood's letter is inadmissible

Ms. Hedman's primary argument is that Dr. Lockwood's July 24, 2010 letter establishes a genuine issue of material fact as to whether Dr. Crum's treatment fell below the standard of care. Dr. Crum argues this court cannot consider this letter because it is unsworn and therefore inadmissible.

An almost identical situation arose in *Kim*, 174 Wn. App. 319. In that case, Young Soo Kim visited Dr. Choong, who extracted a number of Mr. Kim's teeth and surgically replaced those teeth with implants.[1] *Id.* at 321. Mr. Kim later sought treatment from Dr. Kenny, who detected a number of problems with Dr. Choong's implants. *Id.* at 322. Mr. Kim sued Dr. Choong for medical malpractice. *Id.*

In opposition to Dr. Choong's summary judgment motion, Mr. Kim submitted his own declaration and two documents from Dr. Kenny. *Id.* at 325. The first was an unsworn, unsigned exhibit in which Dr. Kenny stated, "'It was wrong diagnosis, treatment[,] planning[,] and execution.'" *Id.* at 326 (alterations in original). The second document was a signed but unsworn letter in which Dr. Kenny described Dr. Choong's work as deficient because he used an improper abutment selection and an inadequate

---

[1] Both dentists have the same last name, so their first names are used for clarity.

number of implants. *Id.* Mr. Kim argued that these documents were sufficient to create a genuine issue of material fact. *Id.*

The *Kim* court disagreed. It held that Mr. Kim's argument failed because the evidence on which he relied was not in the proper form before the trial court. *Id.* The court noted CR 56(e)'s requirement that evidence opposing a summary judgment motion must be in the form of sworn affidavits or declarations made under penalty of perjury. *Id.* Because Dr. Kenny's statements were not in such form, the *Kim* court held that Mr. Kim could not rely on them to create a disputed issue of material fact. *Id.* at 327.

Here, as in *Kim*, Ms. Hedman may not rely on Dr. Lockwood's 2010 letter to create a genuine issue of material fact because the letter was not in the form of a sworn affidavit or declaration made under penalty of perjury, as required by CR 56(e). Courts do not always require strict compliance with CR 56(e) due to the potentially extreme consequences of a summary judgment motion, particularly with respect to the nonmoving party. *Id.* at 326-27. "But we are aware of no case . . . that excuses in whole the requirement that statements purporting to establish a necessary element of a claim or defense be in the form of sworn affidavits or declarations made under penalty of perjury." *Id.* at 327.

Ms. Hedman argues at length that Dr. Lockwood, a prosthodontist, could give an expert opinion on the standard of care for Dr. Crum, an oral surgeon, because Dr. Crum performed restorative prosthodontic work. However, because Dr. Lockwood's letter is inadmissible, it is unnecessary for us to consider this argument.

ii.     None of the remaining declarations or depositions Ms.
         Hedman cites create a genuine issue of material fact

Ms. Hedman cites her other declarations and depositions, arguing these establish a

genuine factual dispute as to whether Dr. Crum fell below the standard of care.

She first cites Dr. Higuchi's deposition testimony in which he opined that "there

was a surgical misdiagnosis of failure of reducing enough of the alveolar bone." CP at

201. However, Dr. Higuchi did not testify or go into detail regarding whether this

surgical misdiagnosis was a breach of the applicable standard of care. In fact, he

specifically testified that he did not intend to render standard of care opinions against Dr.

Crum.

Ms. Hedman also cites Dr. Chung's and Dr. Truelove's declarations that they had

been retained for the purpose of evaluating and determining Ms. Hedman's injuries. But

because Dr. Chung and Dr. Truelove had not yet evaluated Ms. Hedman, nor did they

offer any substantive evidence about her injuries, these declarations do not help Ms.

Hedman.

Ms. Hedman also cites Dr. Bot's deposition testimony. While Dr. Bot testified

that "probably 66 to 75 percent [of Ms. Hedman's depression issues] would be associated

with the dental issue," Dr. Bot never specified which dental treatment was responsible.

CP at 199. Nor did he discuss the applicable standard of dental care or how Dr. Crum

breached it.[2]

_____

[2] One of Ms. Hedman's physicians, Dr. Robinson, filed a declaration in which she

iii. <u>Dr. Brossoit's declaration and deposition</u>

On appeal, Ms. Hedman does not argue that Dr. Brossoit's October 2014 declaration or his subsequent deposition establish a genuine dispute of material fact. We therefore do not address this evidence on appeal. *See* RAP 12.1(a); *Wash. Prof'l Real Estate LLC v. Young*, 163 Wn. App. 800, 818 n.3, 260 P.3d 991 (2011) (Court of Appeals will not decide a case on the basis of issues that are not set forth in the parties' briefs.).

B.     NO ABUSE OF DISCRETION IN DENYING FOURTH CR 56(f) MOTION TO CONTINUE

Ms. Hedman also argues the trial court erred by not continuing the summary judgment hearing so she could present evidence before the court in an admissible format. CR 56(f) allows a trial court to continue a summary judgment hearing. It provides that when a nonmoving party

> cannot present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

CR 56(f). The party seeking a continuance under CR 56(f) must provide a good reason for the delay. *Durand v. HIMC Corp.*, 151 Wn. App. 818, 828, 214 P.3d 189 (2009). In addition, the party must provide an affidavit stating what evidence the party seeks and how it will raise an issue of material fact to preclude summary judgment. *Id.*

---

declared Ms. Hedman suffers from a chronic pain condition which was proximately caused by Dr. Crum's dental care. However, this declaration does not contain any evidence of or discussion about the standard of care or how Dr. Crum breached it.

A court may deny the motion if "(1) the moving party does not offer a good reason for the delay in obtaining evidence; (2) the moving party does not state what evidence would be established through additional discovery; or (3) the evidence sought will not raise a genuine issue of fact." *Coggle*, 56 Wn. App. at 507. The trial court may deny a CR 56(f) motion for any one of these three reasons. *Mossman v. Rowley*, 154 Wn. App. 735, 742, 229 P.3d 812 (2009). This court reviews a trial court's denial of a CR 56(f) continuance for an abuse of discretion. *Durand*, 151 Wn. App. at 828.

Here, in moving for a continuance under CR 56(f), Ms. Hedman failed to state what evidence would be established through additional discovery. Although Dr. Chung and Dr. Truelove each declared that Ms. Hedman had retained them for purposes of evaluating her case, they did not say what their opinions would be.

Ms. Hedman also argues that Dr. Lockwood's 2010 letter indicates she could obtain admissible evidence if given more time. But she never explains why she had not obtained such evidence in the years she had known about Dr. Lockwood's letter.

Ms. Hedman relies on *Coggle*. In that case, plaintiff's counsel retired and substitute counsel appeared one week before the summary judgment hearing. *Coggle*, 56 Wn. App. at 502. Plaintiff's new counsel then moved for a continuance under CR 56(f), which the trial court denied and granted summary judgment for the defendant. *Id.* at 503. The *Coggle* court held this was an abuse of discretion. *Id.* at 509.

*Coggle* is distinguishable. There, plaintiff's substitute counsel attached a declaration with his CR 56(f) motion that specified precisely what steps he and his client

17

were going to take, what filings they needed, and what the filings would accomplish. *Id.* at 502. Substitute counsel "identif[ied] the evidence he sought and explain[ed] that the declarations would rebut the defense expert testimony." *Id.* at 508. Here, Ms. Hedman relies on what she hopes to reveal through additional discovery, rather than identifying concrete evidence that would give rise to a genuine issue of fact.

Moreover, in *Coggle*, the plaintiff had only one prior attorney and that attorney retired; yet, the trial court denied plaintiff's continuance request. *Id.* Here, Ms. Hedman had five prior attorneys before her sixth attorney filed her fourth request for a CR 56(f) continuance. The trial court also granted two of her earlier continuance requests. We conclude the trial court did not abuse its discretion when it denied Ms. Hedman's fourth CR 56(f) continuance request.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____          _____
Siddoway, J.                                              Pennell, J.

18