[No. 15960-1-II.   Division Two.   July 25, 1994.]

A. SHAWN HICKS, *Appellant*, v. GORDON O. EDWARDS, ET AL, *Respondents*.

*A. Shawn Hicks* and *Ulun & Lambe P.S.,* for appellant.

*Kathryn A. Ellis* and *Weinstein, Fischer, Riley, Erickson & Wolf, P.S.,* for respondents.

MORGAN, C.J. — In this stockholder's derivative suit, A. Shawn Hicks appeals from CR 11 sanctions imposed after he was disqualified from representing both a corporation and its majority shareholders. We reverse.

At the times material here, Cedar Ridge Construction, Inc., was a Washington corporation owned 45 percent by Gordon Edwards and 55 percent by Larry and Timothy Colwell (Colwells). Larry and Timothy Colwell, father and son, were two of the three directors on Cedar Ridge's board. Edwards was the third. Hicks, an attorney, represented the corporation from at least 1987.

On May 21, 1990, Edwards filed a shareholder's derivative action against Cedar Ridge and the Colwells. He alleged that the Colwells had diverted $834,219 of the corporation's

money to their own use. He also alleged that the Colwells had transferred corporate assets to other business entities that they controlled, thus reducing Edwards's equity position in the corporation by $375,398.55.

On June 7, 1990, Hicks filed a "Notice of Appearance" on behalf of both the corporation and the Colwells.[1] On August 3, 1990, he filed an answer on behalf of both. In the answer, he asserted counterclaims and a number of affirmative defenses, including the statute of limitations and laches.

After the answer was filed, nothing happened for more than a year. Then, on November 25, 1991, Edwards moved for an order disqualifying Hicks and imposing CR 11 sanctions. In an accompanying declaration, counsel for Edwards asserted that she had informed Hicks of his conflict of interest, and that he had refused to withdraw from his representation of both the corporation and Colwells. Hicks responded by asserting that he had fully disclosed the consequences of joint representation with each of his clients, and that each had consented. He also asserted that laches barred Edwards from bringing his motion 18 months after appearing and 16 months after answering.

It appears that the corporation's formal consent to Hicks's joint representation was not given until December 5, 1991. On that date, at a shareholders' meeting arranged by Hicks, a majority of the shareholders (*i.e.*, the Colwells) adopted a corporate resolution consenting to Hicks's representation of both the corporation and the Colwells.

On December 6, 1991, the trial court heard the motion to disqualify. Hicks orally stated that he had "spoke[n] with three attorneys who specialize in ethics issues",[2] and that he had reasonably investigated the conflict issue by spending "six or seven hours of which I have never charged the corporation . . .."[3]

---

[1] Hicks also appeared for various other Defendants who are immaterial to this appeal.

[2] Report of Proceedings, at 39.

[3] Report of Proceedings, at 40.

The trial court disqualified Hicks from representing the corporation. It found that the interests of the corporation were not being represented because of Hicks's conflict, and that the corporation's consent was illusory. It also rejected Hicks's assertion that laches barred Edwards's motion to disqualify him.

The trial court did not disqualify Hicks from representing the Colwells. It warned, however, that if Edwards wished further review of Hicks's representation of the Colwells, Edwards could file "a revisited motion to that effect"[4] within 2 weeks.

The trial court also imposed CR 11 sanctions for Hicks's failure to investigate the conflict issue before commencing dual representation of the corporation and the Colwells. The court noted the absence of evidence, other than Hicks's bald assertions, showing that Hicks had investigated the conflict issue. However, it left open the possibility that Hicks could provide such evidence in conjunction with a motion for reconsideration.

On December 13, 1991, Hicks filed a motion to reconsider the imposition of sanctions. In support of this motion, he filed an affidavit stating that he had spoken with other attorneys inside his firm, other attorneys in private practice outside his firm, and someone at the Washington State Bar Association. According to the affidavit, these people were of the opinion that Hicks's representation of both the corporation and the Colwells was permissible. On December 17, the trial court denied Hicks's motion to reconsider sanctions.

On December 20, 1991, Edwards filed another motion to disqualify Hicks from representing the Colwells. In opposition, Hicks presented a certificate from Robert Aronson, professor of professional responsibility and evidence at the University of Washington. According to this certificate, Washington law is ambiguous on when an attorney can represent conflicting interests in a closely held corporation, and Hicks had acted reasonably when, with consent, he

---

[4] Report of Proceedings, at 33.

decided to continue representing both the corporation and the Colwells.

On December 27, 1991, the trial court held a hearing on Edwards's second motion to disqualify. Relying on Professor Aronson's certificate, it declined to disqualify Hicks from representing the Colwells. It also retracted its denial of Hicks's December 13 motion to reconsider, and gave Edwards time to respond to that motion in light of Aronson's certificate.

On January 10, 1992, as a result of the trial court's December 27 rulings, Edwards filed a response to Hicks's December 13 motion to reconsider. Attached to the response was an affidavit from John Strait, an associate professor of legal ethics at the University of Puget Sound School of Law. Strait opined that "any reasonable attorney in the position of Mr. Hicks would have researched the law of conflict of interest before deciding to attempt joint representation", and that "[s]uch research would have revealed that in a lawsuit where there is a claim of exploitation of corporate assets for the private benefit of officers, directors and/or minority shareholders", joint representation is "impossible, with or without corporate consent".[5] Strait also asserted that Aronson had not been informed of the details of the case when Aronson rendered his certificate.

On January 24, Aronson responded as follows:

> I stand by the position in my previous Affidavit that, although reasonable experts (and I consider Professor Strait to be one) could disagree as to whether Mr. Hicks should have continued to represent both the Colwells and Cedar Ridge, even with the consent of a majority of the Board and the shareholders, his reliance on [another attorney's] advice and his own research should preclude any possibility that his opposition to the motion could be considered frivolous, subjecting him to Rule 11 sanctions.[6]

On February 19, 1992, the trial court again denied Hicks's December 13 motion to reconsider the imposition of sanctions. It found that

---

[5]Clerk's Papers, at 100.

[6]Clerk's Papers, at 59-60.

any reasonable attorney in Mr. Hicks' position would have researched the law regarding conflict of interest in this case (and would have done that research before the motion for his removal was brought), and would have learned that such a conflict did exist and that he was ethically prohibited from undertaking the representation of the corporation and of its majority shareholders in the situation presented here.[7]

Also on February 19, the trial court granted Edwards's December 20 motion to disqualify Hicks from representing the Colwells. The court found:

If Mr. Hicks were allowed to represent the majority shareholders against the derivative action brought on behalf of the corporation, he would be representing the majority shareholders against the interest of his former client, the corporation, and this provides, at least, the potential for a conflict of interest, to the detriment of Mr. Hicks' former client, and cannot be sanctioned. In fact, it appears from what has been presented, that the potential has become an actuality in certain respects.[8]

On March 11, the trial court determined that the amount of CR 11 sanctions should be $8,512.01. This amount reflected "the necessity of plaintiffs filing and prosecuting the motion to disqualify Mr. Hicks from representing Cedar Ridge Inc., the motion to disqualify Mr. Hicks from representation of the individual . . . defendants in this action, and the motion for reconsideration in connection with the initial denial of that request."⁹

On March 18, Hicks filed a motion to reconsider the amount of the sanctions. On March 26, the trial court granted the motion and increased the sanctions to $9,298. Hicks then appealed the order imposing sanctions, but not the orders disqualifying him from representing the corporation and the Colwells.

We distinguish two questions. One is whether an attorney can represent both a consenting corporation and its consenting majority shareholders against minority shareholders

---

⁷Clerk's Papers, at 53.

⁸Clerk's Papers, at 55.

⁹Clerk's Papers, at 33-34.

who allege that the majority shareholders have improperly exploited the corporation's assets. The other is whether an attorney who argues to a Washington court that he or she is entitled to maintain such dual representation is so lacking in basis as to be subject to sanctions under CR 11. The first question is not before us, because Hicks has not appealed the orders that disqualified him. The second is before us, because Hicks has appealed the order that imposed sanctions.

CR 11 provides, in pertinent part:

> Every pleading, motion, and legal memorandum of a party represented by an attorney shall be dated and signed by at least one attorney of record in the attorney's individual name . . .. The signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or legal memorandum; that to the best of the party's or attorney's knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose . . ..

The rule goes on to authorize sanctions against any party or attorney who signs a document in violation of its terms. *See Skilcraft Fiberglass, Inc. v. Boeing Co.*, 72 Wn. App. 40, 44, 863 P.2d 573 (1993).

According to the Supreme Court, CR 11 addresses two types of filings: (1) those which are "not 'well grounded in fact and . . . warranted by . . . law' ", and (2) those which are interposed for "any improper purpose". *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 217, 829 P.2d 1099 (1992); *see also Biggs v. Vail*, 124 Wn.2d 193, 876 P.2d 448 (1994). Here, we are dealing only with the first type.

■ Addressing the first type, *Bryant* said the "purpose behind CR 11 is to deter *baseless* filings and to curb abuses of the judicial system", but not "to chill an attorney's enthusiasm *or creativity* in pursuing factual or legal theories." 119 Wn.2d at 219. It then stated:

> Complaints which *are* "grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" are not "baseless"

claims, and are therefore not the proper subject of CR 11 sanctions. The purpose behind the rule is to deter baseless filings, not filings which may have merit. . . .

If a complaint lacks a factual or legal basis, the court cannot impose CR 11 sanctions unless it also finds that the attorney who signed and filed the complaint failed to conduct a *reasonable inquiry* into the factual and legal basis of the claim. . . .

119 Wn.2d at 219-20.

■ Essentially, *Bryant* establishes a 2-part test for determining whether a filing is not well grounded in fact or law. It holds that a "pleading, motion or legal memorandum" may be subject to CR 11 sanctions if it is *both* (1) "baseless" *and* (2) signed without reasonable inquiry. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (same); *Lockhart v. Greive*, 66 Wn. App. 735, 743-44, 834 P.2d 64 (1992). A filing is "baseless" if (a) not well grounded in fact, or (b) not warranted by (i) existing law or (ii) a good faith argument for the alteration of existing law. *Bryant*, 119 Wn.2d at 219-20.

In light of *Bryant*, the question here is whether Hicks's opposition to Edwards's motions to disqualify was "baseless" in the sense that it was not warranted by a good faith argument for the extension of existing law. Our answer is no, for the following reasons.

First, there is no clear Washington authority on whether an attorney is permitted to act as Hicks did here. Although Edwards relies on RPC 1.7 and RPC 1.9, neither of those rules is specific, and each is open to interpretation.

Second, authority from other jurisdictions is not uniform. Most cases indicate that an attorney should not act as Hicks did here,[10] but at least one case is to the contrary. Thus, in

---

[10]*Cannon v. U.S. Acoustics Corp.*, 398 F. Supp. 209, 216 n.10 (N.D. Ill. 1975) ("This consent rationale seems peculiarly inapplicable to a derivative suit, because the corporation must consent through the directors, who . . . are the individual defendants"), *aff'd in part, rev'd in part*, 532 F.2d 1118 (7th Cir. 1976); *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 658 (N.D. Tex. 1978) (citing *Cannon* and similar cases); *Frank v. Ducy*, 1986 WL 1964, at *2 (N.D. Ill. No. 85C9642, Feb. 10, 1986) ("Courts have been increasingly reluctant to permit a single lawyer or law firm to represent both a corporation and the individual directors in shareholder's derivative actions"); *Horowitz v. Horowitz*, 151 A.D.2d 646, 542 N.Y.S.2d 708 (1989); *Tydings v. Berk Enters.*, 80 Md. App. 634, 639, 565

*Robinson v. Snell's Limbs & Braces of New Orleans, Inc.*, 538 So. 2d 1045, 1048-49 (La. Ct. App. 1989), the plaintiff brought a shareholder's derivative action alleging that individual directors had looted the corporation. Later, the plaintiff sought to disqualify opposing counsel from representing individual directors and the corporation. After discussing Model Rule of Professional Conduct 1.13 (1983), the court noted that there were no reported Louisiana decisions "construing the conflict of interest provisions of the Model Rules in light of a representation by a law firm of both the corporation and the individual defendants in a derivative action." 538 So. 2d at 1048. The court then noted that the corporation is the ultimate beneficiary in a derivative action, in that any money recovered is returned to the corporation for the benefit of all shareholders. The court thus held:

> Although the corporation appears as a party on both sides of the lawsuit, its true interest lies with the plaintiff shareholder; it is only nominally a defendant. Therefore, [the law firm] represents only the interests of the individual directors who have allegedly harmed the corporation, and the plaintiff's counsel actually represents the interests of the corporation, to which any recovery will be returned. [The law firm] is not representing adverse interests because the corporation *has no* interest as a defendant; it is merely required to be named as one.

538 So. 2d at 1048-49. *Cf. In re Brownstein*, 288 Or. 83, 86-87, 602 P.2d 655, 656 (1979) ("in a small, closely held corporation the rights of the individual stockholders who control the corporation and of the corporation are virtually identical").

Third, as Hicks points out, it can be argued that the American Bar Association has said that "most derivative

A.2d 390, 393 (1989) ("Representation of a corporation as an entity and the majority of its directors, individually, creates a possible conflict of interest for the attorney, particularly where the corporation's interests are adverse to those of the directors") (citing Model Rules of Professional Conduct); *Rowen v. LeMars Mut. Ins. Co.*, 230 N.W.2d 905, 914-15 (Iowa 1975) ("It is also well established that a potential conflict of interest exists when the same law firm attempts to represent the nominal corporate defendant in a derivative action while at the same time representing the corporate insiders accused of wrongdoing") (citing numerous cases).

actions are . . . to be defended by the organization's lawyer like any other suit". The ABA's Model Rule of Professional Conduct (MRPC) 1.13 states in pertinent part:

> (e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

And the official comment to MRPC 1.13 states:

> The question can arise whether counsel for the organization may defend [a derivative] action. The proposition that the organization is the lawyer's client does not alone resolve the issue. Most derivative actions are a normal incident of an organization's affairs, to be defended by the organization's lawyer like any other suit. However, if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board. In those circumstances, Rule 1.7 governs who should represent the directors of the organization.

Fourth, experts in Washington are divided. Professor Aronson opines:

> The language of [MRPC] Rule 1.13 and the ABA Comment, which offer the most authoritative guidance in the area, seem to suggest that the attorney is permitted to represent the corporation and its board members, so long as he reasonably believes that he can adequately represent their interests, and the corporation consents after consultation. . . . I believe that Mr. Hicks' decision to continue to represent Cedar Ridge and the Colwells was reasonable. When added to the substantial delay in bringing the disqualification motion, his decision to resist the motion was also reasonable.

Professor Strait opines:

> [A]ny reasonable attorney in the position of Mr. Hicks would have researched the law of conflict of interest before deciding to attempt joint representation of Cedar Ridge, as a corporation and, separately, its majority shareholders, Larry Colwell and Timothy Colwell. Such research would have revealed that in a lawsuit where there is a claim of exploitation of corporate assets for the private benefit of officers, directors and/or minority shareholders that such joint representation was impossible, with or without corporate consent.

■ Because of a lack of Washington authority, a lack of uniformity in the cases elsewhere, the ABA's comment to MRPC 1.13, and disagreement among experts in Washington, we hold that the trial court abused its discretion in finding that Hicks's opposition to Edwards's motions was "baseless" in the sense of not being supported by a good faith argument for an extension of existing law. *See Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338-39, 858 P.2d 1054 (1993) (standard of review is abuse of discretion). We conclude that the first part of the *Bryant* test has not been met,[11] and that the order imposing sanctions must be reversed.

ALEXANDER and HOUGHTON, JJ., concur.

Review denied at 125 Wn.2d 1015 (1995).

---

[11]Because the first part of the *Bryant* test has not been met, we do not reach the second part of the *Bryant* test, *i.e.*, whether Hicks made reasonable inquiry.