# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TED SPICE, an individual, PAVEL PASYUK, an individual, and PLEXUS INVESTMENTS, LLC, a Washington limited liability company, | No. 55314-7-II |
| Appellants, | |
| and | |
| ESTATE OF DORIS MATHEWS, a Washington Estate, DONNA DUBOIS, as Personal Representative of the Estate, MARK DUBOIS, a purported agent of the Estate, DORIS ELAINE MATHEWS LIVING TRUST, a Washington trust, | ORDER GRANTING MOTION FOR CORRECTION AND AMENDING OPINION |
| Respondents. | |

Respondents move this court to correct its August 2, 2022 opinion. After consideration, we grant respondents' motion and correct the Scrivener's error. The first sentence of the first full paragraph on page 2 that reads, "First, we conclude that the trial court did err by confining Spice's claims," is amended to read: "First, we conclude that the trial court did not err by confining Spice's claims." It is

SO ORDERED.

Panel: Jj. Maxa, Glasgow, Veljacic.

_____
Veljacic, J.

We concur:

_____
Maxa, J.

55314-7-II

Glasgow, C.J
Glasgow, C.J

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TED SPICE, an individual, PAVEL PASYUK, an individual, and PLEXUS INVESTMENTS, LLC, a Washington limited liability company,<br><br>Appellants,<br><br>and<br><br>ESTATE OF DORIS MATHEWS, a Washington Estate, DONNA DUBOIS, as Personal Representative of the Estate, MARK DUBOIS, a purported agent of the Estate, DORIS ELAINE MATHEWS LIVING TRUST, a Washington trust,<br><br>Respondents. | No. 55314-7-II<br><br><br><br>UNPUBLISHED OPINION |

VELJACIC, J. — Over the past 12 years Ted Spice has brought various claims against the Estate of Mathews, including breach of fiduciary duty, waste, and fraudulent transfer; these three claims have previously been appealed and were remanded for further proceedings. After remand, the trial court issued an order setting the issues for trial in which the court delineated two incidents that would serve as the basis for Spice's claims of breach of fiduciary duty and waste. After trial, the court dismissed all of Spice's claims and awarded the Estate attorney fees.

Spice argues that the trial court erred by striking Spice's jury demand because the court incorrectly believed Spice's claims were equitable not legal, and by denying Spice's motion to continue. Spice also argues that the trial court erred by refusing to compel the Estate's personal

representative to testify or otherwise refusing to sanction her or the Estate. Finally, Spice argues that the trial court erred by awarding attorney fees.

First, we conclude that the trial court did err by confining Spice's claims. Additionally, we decline to consider whether the trial court erred by striking Spice's jury demand. Furthermore, we hold that the court did not err by denying Spice's motion to continue or by concluding that Spice failed to provide requisite notice to the personal representative to secure her testimony for trial. Finally, we agree that the court erred when it awarded the Estate the precise attorney fee amount that the Estate requested without placing its reasoning on the record; it is not apparent that the court exercised its judgment in awarding fees as it did. Accordingly, we affirm in part, reverse in part, and remand for reconsideration of attorney fees.

FACTS

I.     PREVIOUS LEGAL PROCEEDINGS

A.     Property Ownership

Doris E. Mathews passed away in 2009. Mathews's daughter, Donna DuBois, was her personal representative; probate began in 2010. Spice brought numerous claims against the Estate and claimed ownership of multiple real properties within Mathews's estate. Spice's claims ultimately went to trial, and the jury split ownership of multiple real properties between Spice and the Estate.

The jury awarded Spice a 25 percent interest in:

- 11003 58th Street Court East Puyallup, Washington
- 11004 58th Street Court East Puyallup, Washington
- 11007 58th Street Court East Puyallup, Washington
- 11011 58th Street Court East Puyallup, Washington

4

The Estate owns the remaining 75 percent of these properties.[1]  Both Spice and DuBois have used "11003 58th St." when referring to all four properties.  Clerk's Papers (CP) at 716.

Following the verdict on Spice's claims, the probate proceedings continued.  At some time later, Spice also gained a 33 percent interest in another Estate property, 11305 58th Street Court East, Puyallup, Washington.

### B.      Appeal—*Spice* II (2017)[2]

#### 1.      Proceedings Below

In 2014, while the probate proceeding was ongoing, Spice brought a separate suit against the Estate in which he asserted a waste claim.  Spice alleged "gross mismanagement and dishonest and wasteful use of these properties" by the Estate.  CP at 794.  Spice went on to allege the Estate's "willful or negligent and destructive maintenance of, or failure to maintain, these properties . . . has directly and proximately caused [Spice] to lose value and equity . . . in the . . . building at 11003 58th St. Ct. E." and "[a]mong other things, structural damage was caused to the [building] when [the Estate] failed to repair, or even shut off water to, a minor water supply line."  CP at 795.  Spice went on to detail the specific damage to the building from the water damage.  Spice also alleged the Estate's negligence "also resulted in similar damage to the two-bedroom house at 11305 58th St. Ct. E."  CP at 795.  "[The Estate] failed to repair or cut off the water supply to a water heater supply line," and Spice again detailed the resulting water damage to the building.  CP at 795-96.  Spice then averred a cause of action for waste and that the Estate's "acts and omissions

---

[1] Spice appealed, and we affirmed; that opinion is referred to as *Spice* I (2016).  *Spice v. Dubois*, No. 44101-2-II (Wash. Ct. App. Mar. 1, 2016) (unpublished), http://www.courts.wa.gov/opinions/.

[2] *Spice v. Estate of Mathews*, No. 48458-7-II (Wash. Ct. App. Dec. 12, 2017) (unpublished), http://www.courts.wa.gov/opinions/.

as set forth above constitute wrongful, unlawful and ongoing waste, and have resulted in damage to [Spice's] property interest as set forth above." CP at 798.

This suit was consolidated into the probate proceeding. The Estate moved for summary judgment on all of Spice's claims. The court granted summary judgment, reasoning that in regards to the waste claim there was no evidence the Estate was involved in management when the waste occurred and that the Estate did not owe Spice a fiduciary duty.

### 2. Proceedings on Appeal—*Spice* II (2017)

Spice appealed and argued "that the trial court erred by granting the Estate summary judgment dismissing his claims for (1) contribution for property taxes paid on co-owned property and (2) breach of fiduciary duty arising from the Estate's (a) misappropriation of funds, (b) failure to contribute to the LLC, and (c) waste." *Spice v. Estate of Mathews*, No. 48458-7-II, slip op. at 1 (Wash. Ct. App. Dec. 12, 2017) (unpublished), http://www.courts.wa.gov/opinions/.

When reviewing the facts of the case, we noted that Spice had amended his complaint following a pipe bursting at 11003 58th Street Court East and that he added the claims "(3) breach of fiduciary duty by misappropriating funds from co-owned properties, and (4) breach of fiduciary duty by committing waste with regard to co-owned properties." *Id.*, slip op. at 4. Additionally, we recognized that although Spice had included an independent waste claim in his amended complaint, on appeal he only argued that the Estate breached its fiduciary duty by committing waste. *Id.*, slip op. at 4 n.2.

We concluded that because Spice had not demonstrated issues of material fact regarding his claims for contribution for property taxes paid on co-owned properties or for breach of fiduciary duty regarding the misappropriation of funds, those issues were properly dismissed on summary judgment. *Id.*, slip op. at 11-12. However, we also concluded that Spice and the Estate

6

were in a quasi-fiduciary relationship and there was a genuine issue of fact regarding the allegation that "the Estate breached its quasi-fiduciary duty to Spice by allowing waste to occur at co-owned properties." *Id*., slip op. at 1-2. Accordingly, "we reverse[d] the grant of summary judgment on the issue of breach of fiduciary duty by allowing waste." *Id*., slip op. at 18. And aside from the trial court's award of attorney fees we "affirm[ed] the remainder of the trial court's summary judgment order and remand[ed] for additional proceedings." *Id*.

C.      Appeal—*Spice* III (2019)[3]

1.      Proceedings Below

While the previous case was pending on appeal, Spice filed another lawsuit against the Estate in which, among other claims in his amended complaint, Spice asserted claims for waste and fraudulent transfers. For the waste claim, Spice alleged that the Estate failed "to repair deficiencies with the structural integrity of the properties and . . . maintain the properties." CP at 419. Spice later repeated this allegation: "By failing to repair, remodel, or otherwise rehabilitate the properties, [the Estate] committed waste causing a decrease in rental value of the properties." CP at 425.

This case was also consolidated into the probate.

The Estate moved to dismiss the case, arguing, among other things, that Spice's waste claim was barred by res judicata. The court granted the Estate's motion, and Spice appealed.

2.      Proceedings on Appeal—*Spice* III (2019)

In *Spice* III, we noted Spice's claim for breach of fiduciary duty—waste, from *Spice* II concerned "water leakage and resulting mold or rot in multiple properties." *Spice v. Estate of*

_____

[3] *Spice v. Estate of Mathews*, No. 50915-6-II (Wash. Ct. App. Oct. 15, 2019) (unpublished), http://www.courts.wa.gov/opinions/.

*Mathews*, No. 50915-6-II, slip op. at 4 (Wash. Ct. App. Oct. 15, 2019) (unpublished), http://www.courts.wa.gov/opinions/. In contrast to Spice's water leakage claim in *Spice* II, Spice's claim for waste in *Spice* III was for the "failure to repair deficiencies with the structural integrity of the properties." *Id*., slip op. at 10. Furthermore, we noted in response to the Estate's motion that Spice had included a variety of documents and reports, one of which discussed an insurance check from August 2017 and that DuBois's failure to sign the check resulted in funds not being available to make the units rentable. *Id*.

We concluded res judicata did not bar Spice's waste claim because "Spice alleged continuing waste regarding property deficiencies and cited a specific incident to support his waste claim from August 2017." *Id*., slip op. at 18. Furthermore, we explained that summary judgment on Spice's waste claim was not proper because he had submitted evidence that DuBois had failed to sign an insurance check and that failure prevented funds from being available to repair rental units. *Id*., slip op. at 25-26.

We concluded that there were questions of material fact regarding Spice's waste and fraudulent transfer claims and remanded those two claims for further proceedings. *Id*., slip op. at 33. We also reversed and remanded the award of attorney fees for the trial court to reconsider. *Id*. We filed our opinion on October 15, 2019, and the mandate was issued on November 26, 2019.

II.     PRESENT CASE—*SPICE* IV

A.     Pretrial Proceedings

1.     Order Setting the Issues

In March 2020, the Estate moved to confirm the issues for trial. The court issued the following order delineating the issues for trial:

1. Whether or not the Estate caused waste in the form of water damage from the pipe burst at the 11003 Property, which pipe burst occurred prior to April 3, 2014; and, what, if any, damages were incurred.

2. Whether or not the Estate breached a quasi-fiduciary duty to Mr. Spice if the Estate is found in the issue above to have committed waste related to any damages on the 11003 Property related to the water damage from the pipe burs[t], which damage occurred prior to April 3, 2014; and what, if any, damages were incurred.

3. Whether or not the Estate caused waste relative [to] not signing a fire-damage insurance check in August 2017; and what, if any, damages were incurred.

CP at 4292.

On the eve of trial, Spice filed motions to recall the mandate in both of his previous appeals, arguing that the trial court failed to follow this court's mandates when it limited his waste claims to two distinct issues; we denied both motions.

2.      Spice's Multiple Attorneys and Motions for Continuances

Also in March 2020, the trial court set trial for July. In April, Spice's attorney, Jonathan Baner, filed a notice of intent to withdraw. Baner explained he could not represent Spice at trial because he and Spice disagreed about how to proceed at trial. Baner explained that "[Spice] needs to have an attorney that is going to proceed to do everything that he wants to be done, and it's not really me." Report of Proceedings (RP) (Apr. 10, 2020) at 4. Baner did not want to discuss the disagreement and instead stated, "Maybe I can just say that [Spice] wants an attorney other than me to proceed with the trial." RP at 8.

Approximately two weeks after Baner filed his notice of withdrawal, Matthew Cunanan filed a notice of appearance. As proceedings progressed, Cunanan indicated that he was a solo practitioner, was caring for his father, was out of the country all of July, attending multiple reunions in August, and getting married in September. Despite this unavailability, on July 19, Cunanan reassured the court that he is "not going to go away from this case" and that he could do

the trial if it was moved to September. RP (Jun. 19, 2020) at 8. The court rescheduled the trial to September 30 and extended the discovery deadline. Spice also brought on another attorney, Jeremiah Styles. On July 21, Cunanan filed a notice of withdrawal.

### 3. Jury Demand

Spice filed a jury demand, which the Estate moved to strike; Spice objected. In his response, Spice highlighted that he had filed a motion for leave to amend his complaint. Spice contended that "the issues and claims raised by the [Estate] . . . do not end at those 'equitable issues.' . . . [Spice] has raised nearly five additional legal claims" in the proposed amended complaint. CP at 5919-20. Spice proceeded to discuss the factors that courts consider to determine if a case with legal and equitable claims is primarily equitable in nature or an action at law. Spice concluded that the legal issues raised in the proposed complaint "are not incidental to the equitable issues in the Complaint." CP at 5921.

The court denied Spice's motion to amend and struck Spice's jury demand, explaining the remaining claims were equitable in nature and that Spice was also seeking equitable relief in his complaint. The court noted, "The parties agree in the pleadings submitted as part of the [m]otion that the issues of waste, fraudulent transfer, and breach of quasi-fiduciary duty in causing waste are equitable in nature." CP at 5116.

### B. Trial

### 1. Motion for a Continuance

Even though trial was supposed to start September 30, 2020, unrelated proceedings ran long pushing the trial to the next day. On the first day of trial, Styles attempted to withdraw for "various reasons." RP (Oct. 1, 2020) at 18. Styles explained that he did not feel prepared for trial, noting this was not his practice area and the scope of representation in this case had changed since

being hired. Originally, Styles believed he would only be helping Spice's previous attorney, Cunanan.

Spice explained he had a "chain reaction of lawyer problems." RP (Oct. 1, 2020) at 30. Spice claimed that Baner withdrew because Baner wanted to reduce his caseload to spend more time with his children during the pandemic. And Cunanan withdrew because, according to Spice, the matter was "beyond" Cunanan and that Cunanan was no longer available as he had over-committed. RP (Oct. 1, 2020) at 23. Spice noted that Cunanan had also been representing Spice in at least four other cases in addition to this case.

Spice also noted that "[a]nother case cropped up," and that Cunanan could not represent Spice at this trial because Cunanan was "on that other . . . case now." RP (Oct. 1, 2020) at 41. Spice claimed that if he could get a continuance, then he could rehire previous attorneys.

The Estate opposed the continuance, arguing that the ongoing suit was "detrimental to the Estate. It's detrimental to our ability to close out a probate. It's detrimental to close out a bankruptcy matter." RP (Oct. 1, 2020) at 43.

The trial court explained its reluctance to grant a continuance because "it prevents anybody from doing anything to move forward with their property and their lives because this keeps going on." RP (Oct. 1, 2020) at 32. "[B]eing in a lawsuit is a very bad place" and it was in "everybody's interest to resolve a case that's ten years old." RP (Oct. 1, 2020) at 32, 45. Furthermore, the court noted that the Estate had prepared for the trial, and its attorney had already spent most of the day in trial, all of which would need to be duplicated if a continuance was granted.

Additionally, the court explained that it had made clear months earlier that it wanted the case to keep moving and take no longer than was absolutely necessary. The court expressed doubts regarding Spice's assertion that he could rehire a former attorney and about how long it would take

11

to get the new attorney up to speed. Such a continuance would set the case back, "starting almost at square one after a year of screwing around with this." RP (Oct. 1, 2020) at 46. The court stated the only continuance it would grant was until Monday morning, which Spice declined. The court also denied Styles's motion to withdraw.

### 2. Compelling DuBois to Testify

On October 2, Styles e-mailed the Estate to inform it that he planned to call DuBois to testify on the morning of October 5. The Estate responded that DuBois was not available on October 5 due to a medical appointment and that Spice had failed to provide noticed as required by CR 43 and CR 30(b)(1). The Estate, however, conveyed that DuBois would "likely be available after lunch" and that "we can have her testify after lunch assuming she is done with the appointment and physically able." CP at 5580. Even so, Spice did not call DuBois on that date.

On the morning of October 6, Spice asked if DuBois was "available to testify at this time." RP (Oct. 6, 2020) at 164. DuBois was not present at trial, and the Estate said it may be able to contact her, but she had medical issues, which made her mornings "pretty difficult." RP (Oct. 6, 2020) at 164. Ultimately, the Estate was unable to reach DuBois.

The court noted that DuBois was unavailable and asked Spice if he had given her notice to attend trial. Spice replied that she was on the witness list for both parties. The court explained a witness list is not enough; Spice had to subpoena her or demand attendance at trial. But Spice gave no indication he had done either.

The court explained, "I can't compel her to attend trial. . . . She didn't receive the notice to attend trial nor was she subpoenaed." RP (Oct. 6, 2020) at 196, 286. The court told Spice, "If . . . I'm wrong about that, then I'm perfectly willing to help," but "you're going to have to find some legal basis for me to compel her to be here." RP (Oct. 6, 2020) at 2887.

12

### 3. Trial Court's Ruling

After Spice rested, the Estate moved to dismiss. The court dismissed Spice's case pursuant to CR 41(b)(3) and CR 50.

## C. Post-Trial Proceedings

The Estate moved for attorney fees. The court granted the fees that were requested, explaining attorney fees and costs were authorized by statute and court rule. Spice appeals.

## ANALYSIS[4]

## I. SCOPE OF REMAND

Spice argues that the trial court misinterpreted this court's opinions from his two previous appeals, and that this misinterpretation resulted in the trial court improperly limiting the scope of his case. The Estate argues that we should affirm because we already considered this issue when Spice moved to recall the mandates, and the trial court properly interpreted our previous opinions. We conclude the trial court did not err.

## A. Legal Principles

A trial court's interpretation of an appellate court's ruling is a legal determination that we review de novo. *Barr v. Snohomish County Sheriff*, 193 Wn.2d 330, 335, 440 P.3d 131 (2019) ("We review questions of law de novo."). But the language "we remand for further proceedings" signals our expectation that "the trial court will exercise its discretion to decide any issue necessary to resolve the case." *In re Marriage of Rockwell*, 157 Wn. App. 449, 453, 238 P.3d 1184 (2010).

---

[4] The Estate argues that Spice's entire appeal fails because he only appealed the court's CR 41 ruling, and not the court's ruling that his case was also dismissed under CR 50, and because he did not challenge the findings of fact that supported the court's conclusions of law to dismiss his claims. We disagree. Spice appealed the October 23, 2020 findings of facts and conclusion of law in which the court dismissed his case under CR 41 and CR 50. Regarding the fact that Spice did not challenge the court's findings, we do not find this to be a persuasive reason to deny review.

When determining the scope of remand, the appellate court's opinion "must be read in its entirety without any particular emphasis" to "ensure[] that the opinion is taken as a whole rather than selectively interpreted." *Deep Water Brewing, LLC v. Fairway Res., Ltd.*, 170 Wn. App. 1, 9, 282 P.3d 146 (2012).

### B.     Analysis

#### 1.     RAP 12.9(a)

The Estate argues that under RAP 12.9, a party can challenge a trial court's alleged noncompliance by moving to recall the mandate *or* challenging the trial court on a second appeal, but not both. Accordingly, the Estate reasons that because Spice moved to recall the mandates, he cannot now raise this issue on appeal.

Without addressing whether RAP 12.9(a) bars review, we exercise our discretion to address the scope of remand as determined by the trial court.

#### 2.     The Trial Court Properly Limited Spice's Issues[5]

Spice argues that the court erred in interpreting this court's previous opinions by limiting the waste issues to those specifically mentioned in the previous opinions. We disagree.

##### i.     *Spice* II

In *Spice* II, the trial court had completely dismissed Spice's claims. Our opinions in *Spice* II and *Spice* III are clear that any waste related claim in *Spice* II that was remanded related only to water leakage. *See Spice*, No. 48458-7-II, slip op. at 4; *Spice*, No. 50915-6-II, slip op. at 4 ("The waste related claims [in *Spice* II] described water leakage and resulting mold or rot in multiple

---

[5] In his reply brief, Spice raises challenges to specific evidentiary rulings the court made during the trial. We decline to consider these arguments because an appellate court does not consider issues raised for the first time in a reply brief. *Ainsworth v. Progressive Cas. Ins. Co*, 180 Wn. App 52, 78 n.20, 322 P.3d 6 (2014).

properties."). To the extent Spice is now arguing that we erred either in *Spice* II or *Spice* III in determining the scope of his challenge in *Spice* II, the time to address those determinations has passed.

Additionally, our description of Spice's waste claim from *Spice* II comports with what he alleged in his complaint. In his complaint, Spice made general allegations of waste, but then he narrowed the complaint by only describing the waste that came from the water damage. Spice also explained that his waste claim was based on the acts and omissions "set forth above"—the only acts or omissions "set forth above" concerned the water leak—further confirming the waste claim from *Spice* II was confined to water leakage.[6] CP at 798.

Accordingly, the trial court's determination that the issues for trial were limited to whether the Estate caused waste or breached a duty in regards to waste and what if any damages that occurred from the water damage from the pipe burst prior to April 3, 2014 does not unduly limit Spice's claim from what we remanded in *Spice* II. Rather, it appears the court expanded on what we remanded because we solely remanded on the breach of fiduciary duty by waste claim, not the independent waste claim.[7]

---

[6] We recognize that Spice referenced "11305 58th St. Ct. E." in his complaint. CP at 795. But Spice was inconsistent below, prior to the appeal, about the buildings that had water damage. Furthermore, we note that the trial court revised its order to incorporate all the buildings that have been referenced as 11003 58th St. Ct. E., so as to include 11007 58th St. Ct. E., following Spice's motion to reconsider that stated the water damage went beyond the one building solely referred to as 11003 58th St. Ct. E.; Spice's motion to reconsider and reply noticeably omit any reference to 11305 58th St. Ct. E. Therefore, we cannot state the trial court erred in excluding the 11305 58th St. E. property, after Spice himself limited his water leakage breach by waste claim to the properties on 11003 58th St. Ct. E.

[7] Any remedy the Estate may have had with regard to the expansion of what was remanded passed when the Estate did not object or assign error to this ruling.

Therefore, the trial court in the most recent proceedings before us did not err in determining that the waste claim from *Spice* II was limited to the 2014 water leak.

ii.     *Spice* III

Furthermore, it is clear from *Spice* III that the extent of the waste claim on remand was limited to an unsigned check issued in 2017. We noted, "Spice alleged continuing waste regarding property deficiencies and cited a specific incident to support his waste claim from August 2017." *Spice*, No. 50915-6-II, slip op. at 18. We also noted that dismissing Spice's waste claim *as a whole* was not proper because he had submitted evidence that DuBois had failed to sign an insurance check and that prevented funds from being available to repair units; this evidence supported Spice's waste claim that there was waste resulting in lost rents and property deficiencies. But we identified no other issue within the *Spice* III waste claim that survived appeal.

Therefore, the court did not err in determining that the breach by waste claim from *Spice* II was limited to the 2014 water leak and the waste claim from *Spice* III was limited to the failure to sign an insurance check for a fire in 2017.

The trial court did not err in delineating Spice's waste claims to two distinct issues.

II.     JURY DEMAND

Spice argues that the trial court erred in striking his jury demand because, Spice contends, his remaining claims (waste, breach of a quasi-fiduciary duty, and fraudulent transfer) were "legal in nature." Br. of Appellant at 25-26. We decline to consider this issue.

B.     Analysis

"Judicial estoppel precludes a party from 'asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Serpanok Constr., Inc. v. Point Ruston, LLC*, 19 Wn. App. 2d 237, 256, 495 P.3d 271 (2021) (quoting *Miller v. Campbell*,

164 Wn.2d 529, 539, 192 P.3d 352 (2008)), *review denied*, 199 Wn.2d 1006 (2022). Judicial estoppel aims "'to preserve respect for judicial proceedings and to avoid inconsistency, duplicity, and . . . waste of time.'" *Serpanok Const.*, 19 Wn. App. 2d at 256 (internal quotation marks omitted) (quoting *Miller*, 164 Wn.2d at 540). Three factors determine whether judicial estoppel applies: "(1) whether the party's later position is clearly inconsistent with its earlier position, (2) whether accepting the new position would create the perception that a court was misled, and (3) whether a party would gain an unfair advantage from the change." *State v. Wilkins*, 200 Wn. App. 794, 803, 403 P.3d 890 (2017).

Here, the first factor weighs in favor of estoppel. Spice's argument below relied on the arguments in his proposed amended complaint in which he claimed there were legal claims in addition to his equitable claims; the amendment was disallowed. Spice included no argument regarding whether the three pending claims, waste, breach of a quasi-fiduciary duty, and fraudulent transfer, were legal in nature. But on appeal, Spice asserts that the court erred in determining his three claims were equitable because all three claims are actually legal claims, even though his response below contained, at least, an implicit concession those claims were equitable. Spice's position on appeal is clearly inconsistent with his position below. Additionally, the second factor weighs in favor of estoppel. It appears the court was misled because it explained, "The parties agree . . . waste, fraudulent transfer, and breach of quasi-fiduciary duty in causing waste are equitable in nature." CP at 5116. Finally, the third factor also weighs in favor of estoppel. Spice would gain an unfair advantage from the change because it would allow Spice an entirely new trial, prejudicing the Estate by requiring it relitigate the claims—claims both parties and the trial court proceeded with under the auspices that they were equitable.

We hold that Spice is precluded from arguing on appeal that the court erred when it stated that his claims were equitable.

III.     REQUIRING DuBOIS TO TESTIFY

Spice argues that the court erred in relying on a technicality under CR 43(f)(1) when it declined to force DuBois to testify. Spice also contends that we must reverse because the court did not conduct a *Burnet*[8] analysis prior to ruling Spice could not call DuBois as a witness. We disagree.

A.     Legal Principles

Under CR 43(f)(1) a party may compel the managing agent of the opposing party to attend the trial "solely by notice (in lieu of a subpoena) given in the manner prescribed in rule 30(b)(1) to opposing counsel of record." The notices must be given not less than 10 days before the trial. CR 43(f)(1). If the managing agent of the defendant refuses to attend and testify at trial, after notice was properly served, then the court may strike the answer and enter judgment against the defendant, and the managing agent may face proceedings as in other cases of contempt. CR 43(f)(3).

"The notice shall state the time and place for taking the deposition and the name and address of each person to be examined, if known, and, if the name is not known, a general description sufficient to identify the deponent or the particular class or group to which the deponent belongs." CR 30(b)(1).

---

[8] *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997).

B.     Analysis

1.     CR 43(f)(1)

Spice concedes he did not meet the technical requirements of CR 43(f)(1), but he contends he substantially complied with the rule by listing DuBois on his witness list.[9]  We disagree.

"Substantial compliance 'has been defined as actual compliance in respect to the substance essential to every reasonable objective of [a] statute.'"  *Williamson, Inc. v. Calibre Homes, Inc.*, 147 Wn.2d 394, 406, 54 P.3d 1186 (2002) (quoting *In re Habeas Corpus of Santore*, 28 Wn. App. 319, 327, 623 P.2d 702 (1981)).  In cases of substantial compliance, there was actual compliance, albeit procedurally faulty.  *Williamson, Inc.*, 147 Wn.2d at 406.  But the "failure to comply (through inaction, inadvertence, or in a manner which does not fulfill the objective of the statute), or belated compliance, cannot constitute substantial compliance."  *Clymer v. Emp. Sec. Dep't*, 82 Wn. App. 25, 29, 917 P.2d 1091 (1996).  "'Noncompliance with a statutory mandate is not substantial compliance.'"  *Id*. (quoting *Petta v. Dep't of Lab. & Indus.*, 68 Wn. App. 406, 407, 409-10, 842 P.2d 1006 (1992)).

Here, it is impossible to establish substantial compliance because there was noncompliance.  *See Clymer*, 82 Wn. App. at 29.  Spice never even attempted to notify DuBois under CR 43.  Spice attempts to mitigate his noncompliance by arguing that the witness list should meet the requirements of CR 43(f).  But the witness list does not satisfy substantial compliance.  A witness list merely serves to notify the other party who you may call to testify.  A witness list does not notify that witness that if they fail to attend the hearing there is the danger of being held

---

[9] Spice later walks this concession back in his reply brief, claiming he did comply with CR 43. But we do not consider arguments made for the first time in a reply brief. *Ainsworth*, 180 Wn. App at 78 n.20.  Nor does Spice explain in his reply brief how he complied with CR 43.

in contempt; thus, it falls short of meeting the reasonable objective of the statute. *See Williamson*, 147 Wn.2d at 406. Accordingly, the trial court did not err when it did not compel DuBois to testify.

### 2. *Burnet* Analysis

Spice also argues that the court committed reversible error in not conducting a *Burnet* analysis prior to prohibiting Spice from calling DuBois.

But there was no reason to consider the *Burnet* factors. The *Burnet* factors are used when the court is considering exclusion of evidence after discovery violations and evidence that is untimely submitted in response to summary judgment. *Keck v. Collins*, 184 Wn.2d 358, 368-69, 357 P.3d 1080 (2015). The trial court was not considering whether to exclude DuBois, but rather was considering whether it had the authority to compel DuBois to testify using the threat of judgment or finding her in contempt. *Burnet* simply does not apply here.

Spice also argues in passing that equitable estoppel should apply in his discussion on *Burnet*, but the exact nature of his argument is unclear. To the extent that Spice is arguing that equitable estoppel is relevant to an analysis of the *Burnet* factors, his argument fails because, again, the *Burnet* factors do not apply here.

To the extent Spice is arguing that equitable estoppel prohibits the Estate from objecting to a lack of notice, we are not persuaded. Spice claims that the Estate agreed to have DuBois testify and if it had not agreed, then he would have provided formal notice as required. But the supposed agreement that Spice identifies occurred during the trial, well past the deadline for giving notice under CR 43(f)(1). This argument also fails.

## IV.   MOTION TO CONTINUE

Spice argues that the trial court abused its discretion when it refused to continue the trial so he would have sufficient time to prepare for trial. We disagree.

20

A.      Legal Principles

A court's decision on a motion for continuance is reviewed for an abuse of discretion.

*Trummel v. Mitchell*, 156 Wn.2d 653, 670, 131 P.3d 305 (2006).  A trial court may consider

> the necessity of reasonably prompt disposition of litigation; the needs of the moving party; the possible prejudice to the adverse party; the prior history of the litigation, including prior continuances granted the moving party; any conditions imposed in the continuances previously granted; and any other matters that have a material bearing upon the exercise of the discretion vested in the court..

*Balandzich v. Demeroto*, 10 Wn. App. 718, 720, 519 P.2d 994 (1974).  Courts may also consider

the maintenance of orderly procedure and diligence.  *State v. Downing*, 151 Wn.2d 265, 273, 87

P.3d 1169 (2004).

B.      Analysis

Spice argues that there was insufficient time to prepare for trial, and he compares his case

to *Coggle v. Snow*, 56 Wn. App. 499, 784 P.2d 554 (1990).  We disagree that *Coggle* is analogous.

*Coggle* explained that the court's primary consideration should have been justice and not

a draconian application of time limits.  *Id*. at 508.  Additionally, a party should not be penalized

for the "dilatory conduct" of their first lawyer.  *Id*.

First, Spice fails to show that the court was imposing a draconian application of time limits

or penalizing him for the "dilatory conduct" of his first, second, or third lawyer.  Our opinion on

the 2017 claims was filed in October 2019 at which point Spice was aware of the claims at issue

and could have started preparing for trial—a trial that was ultimately set for September 30, 2020.

Additionally, there were multiple motions that Spice brought in the months leading up to trial that

could have been prepared and filed much earlier in the proceeding.  Spice provides no explanation,

nor does the record reflect, why he sat on his case for months, apparently waiting until the court

and the Estate attempted to move it forward.  He cannot now claim the court was draconian in holding the parties to the final trial date.

Additionally, the record does not reflect that Spice's first two attorneys withdrawing, leaving him with a new attorney to prepare for trial in three months, were outside his control. Spice's first attorney explained that he had to withdraw because Spice did not want him representing Spice at trial.  Nor does it appear from the record that the withdrawal of the second attorney, Cunanan, was outside of Spice's control.  Below Spice claimed that the workload became too much for Cunanan.  But it was Spice's choice to have Cunanan represent Spice in at least four cases in addition to this case.  And it appears from Spice's statements at trial that Cunanan left this case because another "case cropped up," and according to Spice at the time of the trial, Cunanan was working on another case for Spice.  RP (Oct. 1, 2020) at 41.

Furthermore, Spice was well aware that the remaining attorney, Styles, was never supposed to be Spice's primary attorney and that he did not have the necessary expertise.  Despite this, Spice chose to hire Styles, and then chose to retain Styles as the primary attorney.  The record does not reflect that this is a matter of the court penalizing a client for their lawyer's conduct or applying draconian time limits, but rather it appears to be a result of Spice's choices over nearly a year between our *Spice* III opinion and his trial.

Nor is there any other indication that the trial court's primary concern was not justice or that it abused its discretion when it denied Spice's motion to continue on the first day of trial.  The trial court considered how long the overall proceeding had been pending, how it had been almost a year since the 2017 claims had been remanded, the toll litigation takes on the parties, and that the pending suit prevented the parties from moving forward with the property and other proceedings.  The court also questioned the length of time it would actually take to return to trial

22

if the trial was continued for Spice to bring on another lawyer.[10]   The court did not abuse its discretion in denying Spice's motion to continue.

V.     ATTORNEY FEES BELOW

Spice argues that, even if we affirm, the court erred in awarding attorney fees to the Estate because the trial court erroneously determined his claims were frivolous, misapprehended the source of his claims, and failed to independently evaluate the reasonableness of the fees.  We agree the court erred and remand for the court to reconsider its award of attorney fees.

A.     Frivolity

Spice argues that the court erred in awarding fees under CR 11, RCW 64.12.020, and RCW 4.24.630 because his claims were not frivolous under CR 11 because they had survived appeal and he had not made a claim under either of those statutes.

CR 11 provides for attorney fees as a sanction for baseless filings.  A filing is baseless if it is "(a) not well grounded in fact, or (b) not warranted by (i) existing law or (ii) a good faith argument for the alteration of existing law." *Hicks v. Edwards*, 75 Wn. App. 156, 163, 876 P.2d 953 (1994).  A trial court may not impose CR 11 sanctions for a baseless filing "unless it also finds that the attorney who signed and filed the [pleading, motion, or legal memorandum] failed to conduct a *reasonable inquiry* into the factual and legal basis of the claim." *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992).  The court must use an objective standard, inquiring "whether a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justified." *Id*.  "To avoid being swayed by the benefit of hindsight, the trial court should impose sanctions only when it is 'patently clear that a claim has absolutely no

---

[10] We note that Spice also assigns error to an order declining to continue the trial in September, but we decline to consider that argument because Spice's argument focuses on the motion made the first day of trial.  RAP 10.3.

chance of success.'" *MacDonald v. Korum Ford*, 80 Wn. App. 877, 884, 912 P.2d 1052 (1996) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986)); *Bryant*, 119 Wn.2d at 220.

Here, we disagree with the trial court that the claims had absolutely no chance of success. But more importantly, the trial court did not analyze whether Spice's counsel failed to conduct a reasonable inquiry into the factual and legal basis for the claims. Accordingly, the trial court erred in basing part of its reasoning on CR 11.

In light of our conclusion that Spice's claims were not frivolous, we remand to the trial court to determine whether it desires to nonetheless award attorney fees under RCW 64.12.020 or RCW 11.96A.150.

B.     Independent Review

Spice argues that the trial court erred in accepting the Estate's request without questioning any of the fees, as evidenced by it accepting fees that a previous trial court had already ruled were unreasonable or disallowed. We agree.

We review "the amount of an attorney fee award for abuse of discretion." *Singh v. Zurich Am. Ins. Co.*, 5 Wn. App. 2d 739, 760, 428 P.3d 1237 (2018). "'Courts must take an *active* role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought. Courts should not simply accept unquestioningly fee affidavits from counsel.'" *Id.* at 760-61 (quoting *Mahler v. Szucs*, 135 Wn.2d 398, 434-35, 957 P.2d 632, 966 P.2d 305 (1998)). Moreover, when a trial court awards attorney fees, it must articulate the grounds on which it is basing its decision, thereby creating a record sufficient to permit this court to conduct a meaningful review. *Brand v. Dep't of Lab. & Indus.*, 139 Wn.2d 659, 674, 989 P.2d 1111 (1999). This means that the trial court "must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the trial court awarded the amount in question." *SentinelC3,*

*Inc. v. Hunt*, 181 Wn.2d 127, 144, 331 P.3d 40 (2014). The findings must show that the trial court did more than unquestioningly accept counsel's fee affidavit. *See Berryman v. Metcalf*, 177 Wn. App. 644, 658, 312 P.3d 745 (2013).

Here the record is insufficient to allow us to conduct a meaningful review. There is no indication the court took an active role in assessing the request for attorney fees. The court awarded the precise amount of fees that the Estate requested at the hearing on attorney fees. The trial court did not address any of the fees requested or objected to at the hearing; instead, it told the parties it would "take a little closer look" and then send a copy of its order. RP (Oct. 23, 2020) at 9. Similarly, the written findings and conclusions do not indicate the court actively reviewed the award requested because the trial court failed to make any alterations to the findings and conclusions that the Estate submitted. Instead, the record reflects that the trial court accepted the fee affidavit unquestioningly. Accordingly, we remand for the trial court to reconsider the amount of attorney fees, should it determine fees are appropriate. This is not to say that the trial court cannot award the same amount again, merely that the record must reflect that the trial court actively considered the fees requested.[11]

ATTORNEY FEES ON APPEAL

Both Spice and the Estate request attorney fees on appeal under RCW 11.96A.150.

We decline to award fees to either party. RAP 18.1 "requires more than a bald request for attorney fees on appeal; the party *must include argument* and citation to authority." *City of Seattle v. 2009 Cadillac CTS*, 2 Wn. App. 2d 44, 54, 409 P.3d 1121 (2017) (emphasis added). Spice only

---

[11] Spice also requests that on remand to retry his claims, his case should be assigned to a new judge because the court has already ruled his claims were frivolous, indicating the court would not be able to set aside its previous ruling on remand. Because we are remanding only for the attorney fees issue, we decline to consider this argument.

provides argument regarding the trial court's framing of the issues and its failure to compel DuBois to testify. Both of these underlying arguments are unpersuasive; these unsuccessful claims are not a basis for attorney fees. The Estate, on the other hand, merely cites to legal authority with no argument as to why it should be awarded fees.

## CONCLUSION

We conclude that the court did not err in interpreting the previous two appeals. Furthermore, we decline to consider whether the court erred in striking Spice's jury demand. We conclude the court did not err in declining to compel DuBois to testify or denying Spice's motion to continue. Additionally, we conclude that the trial court erred in its attorney fee award. Finally, we decline to award any attorney fees on appeal.

In sum, we affirm in part, reverse in part, and remand solely for the trial court to reconsider the award for attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Maxa, J.

_____
Glasgow, C.J.

26